THOMAS J. HARRIS, Respondent, v. ALLSTATE INSURANCE Co., Appellant, et al., Defendants.

Argued March 10, 1955; decided July 8, 1955.

*Asher Marcus* for appellant. I. " Water ", in the sense used in the policy, was not the " originating cause " of the incident in issue. (*Matter of Stradar* v. *Stern Bros.*, 184 App. Div. 700; *Tonkin* v. *California Ins. Co. of San Francisco*, 294 N. Y. 326.) II. The Appellate Division's construction of defendant's comprehensive policy was an unreasonable one which ought not be approved by this court. (*Schoellkopf* v. *Coatsworth*, 166 N. Y. 77; *Moeller* v. *Associated Hosp. Service of Capital Dist.*, 304 N. Y. 73; *Russell* v. *Allerton*, 108 N. Y. 288.) III. Plaintiff's loss was not an " accidental loss " as defined in the policy. (*Borneman* v. *John Hancock Mut. Life Ins. Co.*, 289 N. Y. 295.) IV. Assuming that the impact of the automobile with the water caused sufficient damage to the automobile so as to result in its eventual destruction, the impact itself constituted a collision, damages for which are expressly excluded by the policy. (*Freiberger* v. *Globe Ind. Co.*, 205 App. Div. 116; *Polstein* v. *Pacific Fire Ins. Co.*, 122 Misc. 194; *Harris* v. *American Cas. Co.*, 33 N. J. L. 641; *Southern Cas. Co.* v. *Johnson*, 24 Ariz. 221;

*Haller & Co.* v. *International Ind. Co.,* 238 Ill. App. 361; *Fireman's Ins. Co. of Newark* v. *Savery,* 88 Ind. App. 296; *Power Motor Co.* v. *United States Fire Ins. Co.,* 69 Mont. 563.) V. The water damages contemplated by the comprehensive coverage of the policy sued upon were not the damages for which plaintiff brought the action herein. (*Tonkin* v. *California Ins. Co. of San Francisco,* 294 N. Y. 326.)

*Sydney H. Harris* for respondent. I. The court properly refused to charge defendant's request that if the jury finds that the accident between the car and the water was a collision, then they should find for defendant. II. Plaintiff's loss was within the scope of the policy issued to him. (*Tonkin* v. *California Ins. Co. of San Francisco,* 294 N. Y. 326; *Wheeler* v. *Phenix Ins. Co.,* 203 N. Y. 283; *Bird* v. *St. Paul Fire & Marine Ins. Co.,* 224 N. Y. 47; *Bolling* v. *Northern Ins. Co. of N. Y.,* 280 N. Y. 510; *Block* v. *Standard Ins. Co. of N. Y.,* 292 N. Y. 270.) III. Wording in the policy must be construed most strongly against the insurer. (*Liverpool etc. Ins. Co.* v. *Kearney,* 180 U. S. 132; *Hartol Products Corp.* v. *Prudential Ins. Co. of America,* 290 N. Y. 44; *Gillet* v. *Bank of America,* 160 N. Y. 549; *Moran* v. *Standard Oil Co.,* 211 N. Y. 187.)

FULD, J. Driving in a heavy rainstorm, in a section where there were signs, " Flood area, caution," plaintiff ran into a puddle of water some 50 feet long and 8 inches deep. The right side of his car hit the water, traveling at a speed of about 45 miles an hour, and he felt the car pull to the right. He tried to steer to the left in order to stay on the highway, but the car kept pulling to the right, then mounted an embankment, turned over, and was substantially demolished.

In this action, plaintiff seeks to recover for the damage under an automobile insurance policy issued by defendant, which embraced " loss caused by * * * water," but excluded damage caused by " collision " or " upset " of the vehicle. More precisely, the policy proper provided — in " Coverage H " — that defendant insurance company would " pay for loss to the owned automobile * * * caused by missiles, falling objects, fire, theft, explosion, earthquake, windstorm, hail, water, flood, vandalism, riot or civil commotion " explicitly excluding loss occasioned by collision between it and another object or by its

upset. A rider to the policy — " Coverage R " — similarly recited that defendant would " pay for all other loss to the owned automobile, except loss caused by collision between it and another object or by its upset, and except that $50 shall be deducted from the amount of each loss. Loss caused by missiles, falling objects, explosion, earthquake, windstorm, hail, water, flood, vandalism, riot or civil commotion shall not be deemed loss caused by collision or upset." The term " loss " was defined as " each direct and accidental loss of or damage to the automobile."

An automobile mechanic, who examined the car after the accident, found that the tie rod controlling the steering mechanism had been bent, and he testified that such damage to the rod could have been caused by the impact of plaintiff's speeding car with the puddle of water. The trial court denied defendant's motion to dismiss the complaint, and instructed the jury to find for the plaintiff if it concluded that the tie rod was bent as a result of its " coming in contact " with the water and that the accident was occasioned by " the damage to the tie rod." Following a verdict for plaintiff for the value of the car, and successive affirmances by the Appellate Term and the Appellate Division, defendant has appealed to this court by leave of the Appellate Division.

There can be no doubt, under the evidence and the theory on which the case was submitted to the jury, that any damage to the tie rod of plaintiff's car resulting from contact with the puddle of water was caused, not by any destructive action of the water as such, but solely by reason of the impact or collision of the fast-moving car with the body of water. There was no claim or suggestion that the water itself, as water, could have bent the tie rod. Rather, it was the force of the collision with the puddle of water, as just another tangible body or object, that brought about the accident.

The question for decision is, of course, the meaning of the policy terms embracing " loss caused by * * * water," in their interrelation with the provisions excluding damage resulting from " collision " or " upset." In approaching that inquiry, account must be taken of " the reasonable expectation and purpose of the ordinary business man " in making the contract. (*Bird* v. *St. Paul Fire & Marine Ins. Co.*, 224 N. Y. 47, 51.) The

words of the policy are to be read in context, the language construed fairly and reasonably, with an eye to the object and purpose sought to be accomplished by the writing. Wise is the caution that courts are " not to make a fortress out of the dictionary " (*Cabell* v. *Markham,* 148 F. 2d 737, 739), for, to cull from an opinion of Mr. Justice HOLMES, " A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content " according to the circumstances in which it is used. (*Towne* v. *Eisner,* 245 U. S. 418, 425.)

To ascribe to the concept of " water " damage the broad content urged by plaintiff, embracing any accident in any way traceable to water, would not only extend the coverage far beyond that contemplated by the policy, but would nullify the specific exclusion of the hazards of " collision " and " upset." In view of the much lower premium payable because of such exclusion, the insured could not reasonably have expected the coverage of the policy to extend, nevertheless, to the peril of " collision " with a body of water or any other body or object. It might just as well be contended that the policy protects against a collision or upset occasioned by skidding on a wet or watery road. There could, of course, be no possible basis for any such claim, and the difference between a skid and what here occurred is one simply of degree, not of kind. The only fair and reasonable interpretation is that " loss caused by * * * water " within the sense of this policy covers only hazards naturally associated with water's distinctive and peculiar properties and engendered by the destructive power of water as such, as in cases of submersion, inundation or leakage.

Nor is plaintiff's broad construction warranted by the language of " Coverage R," reciting that loss caused by water or any of the other specified risks " shall not be deemed loss caused by collision or upset." Quite apart from the considerations noted above, the word " water " in that clause must be read and considered in relation to the other hazards with which it is there grouped, under the familiar principle of *noscitur a sociis.* (See, e. g., *Aikin* v. *Wasson,* 24 N. Y. 482, 484; *Maryland Cas. Co.* v. *Finch,* 147 F. 388, 395.) All of the other risks listed with " water " — namely, " missiles," " falling objects," " explosion," " earthquake," " windstorm," " hail," " flood," " vandalism," " riot " and " civil commotion " — represent

forces that would produce damage by being propelled against, or by actively operating upon, the insured automobile. The vehicle encountering one of these hazards would thus be the object of the destructive action insured against, rather than itself an operative agency or instrumentality. In this context, then, regardless of whether it might have a broader scope in some other context, the term " loss caused by \* \* \* water '' must be taken to comprehend only the damaging effect of '' water '' when it operates, as an active agent, in moving against or falling upon the automobile, and not, as in the present case, when its role is merely that of an object which the vehicle itself moves against or strikes. It is in the former situation alone that the policy provision in question assumes meaning and purpose.

Our decision in *Tonkin* v. *California Ins. Co.* (294 N. Y. 326) does not call for any different result; its resemblance to the present situation is purely superficial. In that case, as plaintiff was driving along, a gust of smoke from a fire that had broken out under the dashboard of his car obscured his vision and caused him to lose control and to collide with another vehicle. Plaintiff brought suit under a policy which covered loss by fire, but excluded the hazard of collision. We held that the damage resulting from both the collision and the fire was brought about by the fire and, accordingly, came within the fire coverage of the policy.

The collision in *Tonkin*, though not in itself an insured peril, was, nevertheless, within the policy's compass, since it was the proximate consequence of the precise hazard, i.e., fire, designated in the policy. Here, on the other hand, the upset of plaintiff's car and the ensuing demolition stemmed, not from an eventuality covered by the policy, but, primarily and exclusively, from the specifically excepted peril of impact with an object which happened to be liquid. The loss is, therefore, not one for which recovery may be had under this policy. As Presiding Justice PECK, also eschewing an overly literal interpretation of the terms of the policy, aptly wrote in his dissent below, '' There was no water damage in the sense that anyone would think of water damage.''

The judgments should be reversed and the complaint dismissed, with costs in all courts.

FROESSEL, J. (dissenting). Plaintiff secured from defendant-appellant its insurance policy, which contained the following paragraph: " COVERAGE H — COMPREHENSIVE INSUR-ANCE To pay for loss to the owned automobile [except for collision with another object or upset] but *including* * * * loss caused by * * * water, flood " (emphasis supplied). An indorsement was added to said policy, and in a paragraph entitled " COVERAGE R — $50 DEDUCTIBLE COMPREHENSIVE ", the insurer in subdivision 3 thereof expressly agreed to " pay for all other loss to the owned automobile [except for collision with another object or upset, and a $50 deduction] * * * Loss caused by * * * water, flood * * * shall not be deemed loss caused by collision or upset ". An additional premium was charged for this coverage, the total premium paid having been $94.07.

There is no qualification in the policy that the water had to be in the form of rain or in any other form; that it had to operate " as an active agent, in moving against or falling upon the automobile ", that the coverage embraces " only hazards naturally associated with water's distinctive and peculiar properties and engendered by the destructive power of water as such, as in cases of submersion, inundation or leakage " as stated in the prevailing opinion; or that the damage had to be a " water damage " as stated in the dissenting opinion of the Appellate Division. There was no qualification whatever.

Courts have no right to make contracts for people, nor write provisions into them. We concern ourselves " with what the parties intended, but only to the extent that they evidenced what they intended by what they wrote " (*Raleigh Associates* v. *Henry*, 302 N. Y. 467, 473). Here the insurance company, in the clearest language, wrote that it would " pay for loss * * * caused by * * * water, flood ", but, recognizing that collision could occur between this insured automobile and water, it additionally provided so as to remove all ambiguity, and without any qualification, " Loss caused by * * * water * * * shall not be deemed loss caused by collision or upset ". How much more plainly can language be written?

In the instant case, plaintiff, accompanied by his wife and daughter, was driving his comparatively new car from Montauk,

Long Island, during a heavy rain. He was traveling on the right or outside lane of Route 39, a three-lane highway, at between 40 and 45 miles per hour and approached Southampton at about 2:30 P.M. Since it had been raining heavily all day, there was sufficient water to create a flooded condition. He saw a sign reading "Flood area, caution." As he turned a bend in the road, in the right lane, the right side of his car came into contact with a sheet of water 50 feet long and two thirds of a foot deep. Plaintiff tried to turn to the left, away from the flood waters, but his car pulled to the right, turned over and ended up on an embankment. It was established below that the water damaged the tie rod of plaintiff's car, as a result of which he lost control. Plaintiff was rightfully on the highway traveling in the proper lane, well within the speed limit permitted by law, and were it not for the water which flooded the highway, he would not have suffered the damage to his automobile. Thus, since the policy expressly provides unequivocally that "Loss caused by * * * water, flood * * * shall not be deemed loss caused by collision or upset", I agree with the three courts below that plaintiff was entitled to recover.

*Tonkin* v. *California Ins. Co.* (294 N. Y. 326) is definitely controlling here. There plaintiff had a comprehensive insurance policy virtually identical with that in the case before us. A gust of smoke from fire under the dashboard of plaintiff's auto caused him to lose control of the vehicle so that it collided with another car. The defendant conceded the fire damage amounting to $38, but disclaimed liability for the damage attributable to the subsequent collision in the sum of $477.30, on the ground that the latter was expressly excluded from the policy coverage. We rejected that contention, saying (p. 329): "The policy language is definite enough to exclude loss when collision is the *primary and exclusive cause,* and it would do so here except for the fact that fire — the hazard insured against — was the factor causing the driver to lose control of the vehicle and was so closely associated with it in point of time and character as to constitute the proximate producing cause of the collision." (Emphasis supplied.) The proximate consequence of the precise hazard insured against was within the policy's compass in both cases, except that it was fire in the *Tonkin* case (*supra*) and

water in this case; both hazards caused the drivers to lose control of their cars after doing nominal damage initially — $38 in the *Tonkin* case, a bent tie rod in this case.

Finally, even assuming that the language employed by defendant in its insurance policy were doubtful or uncertain in its meaning (which I do not concede), the law is firmly established that all ambiguity must be resolved in favor of the policyholder and against the insurer. (*Tonkin* v. *California Ins. Co., supra,* 294 N. Y., at pp. 328–329; *Hartol Products Corp.* v. *Prudential Ins. Co.,* 290 N. Y. 44, 49 [and cases therein cited]; *Lachs* v. *Fidelity & Cas. Co. of N. Y.,* 306 N. Y. 357, 365–366; *Royal Ins. Co.* v. *Martin,* 192 U. S. 149, 162; *Liverpool etc. Ins. Co.* v. *Kearney,* 180 U. S. 132, 136.)

The judgment appealed from should be affirmed, with costs.

CONWAY, Ch. J., DESMOND, VAN VOORHIS and BURKE, JJ., concur with FULD, J.; FROESSEL, J., dissents in an opinion in which DYE, J., concurs.

Judgments reversed, etc.