Joseph Slavin, J.
The ¡basic action is one where plaintiff Bernstein sues the owner of a building (Crystal) in which she was a resident and a plumber (Arcoy), claiming negligence either in the maintenance or installation of a kitchen sink *887 faucet which gave rise to a situation which caused her an injury.
As a preliminary matter the court is called upon to determine the responsibilities of Crystal and Arcoy as between them should Bernstein prevail on trial. This issue is to be tried first. (See order of Mr. Justice Beckinella dated September 23,1971.)
If Bernstein prevails against Crystal only, there are no problems. The determination to be made now is required to anticipaté the possibility that she may prevail against Arcoy only or against both.
The building in which Bernstein was a resident was constructed and owned by Crystal. It has liability insurance coverage and under that policy has been afforded a defense by the carrier (Liberty Mutual Insurance Co.).
During the course of the construction Crystal had hired Arcoy, as the plumbing subcontractor. The agreement provided that Crystal would, through its own broker, obtain liability insurance coverage for Arcoy and itself in relation to Arcoy’s work, and would deduct the premium charges from the amount payable to Arcoy. It appears that Arcoy was never given the issued policy. Arcoy did the plumbing for the erection of this building and for the purposes of this portion of the trial finished by the end of 1968.
A policy had been written by Aetna Insurance Company for a period September 14, 1967 to September 14, 1968 and the premiums paid. The face of the policy, a standard form, showed its coverage to be "Comprehensive General Liability Insurance” and "Contractual Liability Insurance”.
The face of the policy carried forward on it the premium to be paid. Examining the entire policy we see that the premium was made up of four different "hazards” being (1) premises— operations, (2) completed operations, (3) contract between the insured (Arcoy) and Crystal Building Corp. and (4) underground property damages.
Bernstein in her suit alleges that she was injured on January 19, 1969. When Aetna was initially informed of the claim they disclaimed. They took the simple position that there was no coverage since the policy was a general liability one covering injuries occasioned during actual work in progress. Thereupon Arcoy retained private counsel to defend the action.
*888 During the course of the trial as between Crystal and Arcoy, the Aetna policy was presented and examined. As stated above it showed a "completed operations — plumbing” endorsement. A Mr. Rudolph Buccia was called as a witness. Mr. Buccia was Aetna’s agent who issued the policy. He testified that the "completed operations” endorsement covers a factual situation as exists with the Bernstein claim. (If the Arcoy work done during the policy period was negligently performed, the policy covered even if the injury occurred after the end of the period.) At this point the matter was adjourned so that the parties could implead Aetna and also Greater New York Mutual Insurance Co., Arcoy’s general liability insurance carrier. This was done and these two companies answered and of course denied coverage.
. On the continued trial, Aetna presented its underwriter, who testified that the "completed operations” endorsement did not cover this situation. Aetna’s position now adds to its initial disclaimer, the defense that section V of the policy, limits the entire policy to injuries occurring during the policy period, whether caused during work in progress or by a completed operation. Their position, (contrary to the other expert’s opinion) simply stated, is that if the insured "negligently” installs a plumbing fixture on a day within the policy period and the item "holds” long enough so that no one is hurt until after the policy period, they are no longer responsible under that policy. Their position is that if Arcoy "negligently” installed the plumbing fixture on September 14, 1968 (when no one was yet living in the apartment) and the next day a tenant moved in and was injured by that fixture, Aetna’s policy would not cover.
If the court finds that the policy issued by Aetna covers the Bernstein accident then I should grant Crystal’s application.to strike the affirmative defenses alleged in Arcoy’s answer to Crystal’s counterclaim (set forth in length in Mr. Justice Beckinella’s order of September 23, 1971). If I find that the Aetna policy does not cover, I must deny the application to strike that affirmative defense. We then must continue the trial as between Crystal and Arcoy to determine if Crystal failed to obtain the insurance it contracted to obtain on behalf of Arcoy, thereby shifting the responsibility of any recovery which might be chargeable to Arcoy back to Crystal on a breach of contract theory.
Prior to October 1, 1966, completed operations hazard was *889 included in the comprehensive liability coverage. The standard form of policy was then changed so as to exclude this coverage and required it to be separately added and a separate premium calculated. Evidently the insurance companies were having problems with this type of coverage (see Schreiber, Liability Insurance Disputes, The New Comprehensive General Liability Policy by Richard H. Elliot; Long, The Law of Liability Insurance [1975 ed], § 10.13).
The question to be asked and answered, therefore, is why would an insured add this coverage if it did not extend beyond the period of the policy since if he was still on the job, the general liability coverage would be available. (Heyward v American Cas. Co. of Reading, Pa., 129 F Supp 4.)
In order to arrive at an answer, we must consider the whole policy in order to arrive at the true construction of the meaning and intent of the coverage (Heyward v American Cas. Co., supra), and of course the policy is to receive a construction most favorable to the insured. (Matter of Vanguard Ins. Co. [Polchlopek] 18 NY2d 376.) A definition of a policy provision should be determined from the common sense viewpoint of the average person, Lewis v Ocean Acc. & Guar. Corp. (224 NY 18), and in looking at a policy in order to reconcile exclusions with coverage as it affects the insured’s regular business activities, we resolve them in the light of the reasonable expectations and purpose of an ordinary businessman in placing the insurance. (Harris v Allstate Ins. Co., 309 NY 72; D’Agostino Excavators v Globe Ind. Co., 7 AD2d 483; Vito v General Mut. Ins. Co., 15 AD2d 289.) Any ambiguity regarding definitions should be resolved against the insurer. (Hartol Prods. Corp. v Prudential Ins. Co. of Amer., 290 NY 44.)
In construing the policy before us, I find that the "completed operations” endorsement was intended to cover a situation such as exists here (Kelley v Indemnity Ins. Co. of North Amer., 252 App Div 58, affd 276 NY 606; Johnson v National Union Fire Ins. Co. of Pittsburgh, Pa., 56 Misc 2d 983), and if the company had intended that it be limited only to the policy period it should have been clearly spelled out. (Baldinger v Consolidated Mut. Ins. Co., 15 AD2d 526; affd 11 NY2d 1026.)
It is therefore suggested that Aetna Insurance Company, if it be so advised, may attend at the conference now scheduled for May 17, 1976 to fix a trial date for the action in chief either on its own behalf, or if they desire, have their attorneys *890 substituted for the attorneys for Arco. It is the court’s intention to fix a trial date at the conference and proceed to trial. The plaintiff is now approximately 76 years old and further delay in this case will not be permitted.
We turn now to a disposition of the various matters still pending.
1. As to an order concerning the affirmative defense. In the exercise of my discretion, I deny such application. The affirmative defense shall stand so as to be available to Arcoy on trial. This is so, since if Arcoy did not "complete” its operations prior to September 14, 1968 and the plaintiff prevails on her theory that Arcoy was negligent, then the completed operations coverage would not attach. If such a fact is proved, then the general liability portion of the policy would govern. As to that portion coverage ended September 14, 1968. If Arcoy had not "completed” its work, it may have been Crystal’s duty to renew the coverage and continue it in effect until Arcoy’s work was "completed”.
2. In view of the foregoing, and again as a matter of discretion, I deny the motion by the attorneys for Arcoy to be relieved. This matter hopefully will be brought to a conclusion by the end of next month. After that, or in the interim Arcoy may, if it be so advised institute an action against Aetna for legal fees incurred by it in the defense of this action.
3. The motion by Greater New York Mutual Insurance Company to dismiss the fourth-party complaint as against it is denied. That company was Arcoy’s general liability insurance company. The premiums paid for the coverage were based on an audit of the various jobs that Arcoy was hired as a plumbing contractor. The particular job involved in this lawsuit was specifically excluded by an endorsement dated January 31, 1968. However, this denial is without prejudice to a renewal at the end of the plaintiff’s case. If the evidence is such that there is no question of the date of the installation of the kitchen sink and water faucets as being subsequent to January 31, 1968, then the exclusion would attach and the court will grant the motion.