Florence De Forte, Appellant, v Allstate Insurance Company, Respondent.

Fourth Department, July 9, 1981

466

APPEARANCES OF COUNSEL

*Brennan, Tesseyman, Zelman, Runfola, Brownstein &
Loonsk (Edward Dinki* of counsel), for appellant.

*Brown, Maloney, Gallup, Roach & Busteed (John Gallup*
of counsel), for respondent.

OPINION OF THE COURT

CARDAMONE, J.

Plaintiff Florence De Forte was stopped by Police Officer
Mancini for speeding in November, 1972. While alighting
from her automobile to speak with the officer, plaintiff's
German Shepherd, "Max", which was inside the car, jumped
out and bit the officer. In May, 1974 plaintiff took "Max" to
the veterinarian for his annual distemper shot. Taking him
in on a chain, plaintiff encountered Kathleen Madden and
her husband, who was walking on crutches. "Max" attacked
and bit Mrs. Madden.

As a result of these two incidents, plaintiff was sued
by the officer for personal injuries and by the City of Buf-
falo for the medical expenses and lost wages which it was
required to pay to the officer. She was also sued by Kathleen
Madden for her injuries and by her husband on his deriva-
tive cause of action. When defendant, Allstate Insurance
Company, refused to defend these still pending actions, Mrs.
De Forte commenced the instant declaratory judgment ac-
tion under her business package policy. After a trial plain-
tiff's action was dismissed and the trial court declared that
these occurrences are not covered by plaintiff's policy with
Allstate. In our view the policy covers both incidents, and
the contrary ruling at Trial Term must be reversed.

Since 1964 plaintiff has owned and operated a four-
family multiple dwelling in Buffalo, in one of which plain-
tiff lives. In 1971 she obtained "Max" as a watchdog for the
premises and normally kept him chained in the backyard
until 11:00 P.M. It is not contested that "Max" is a watch-
dog. Through the advice of her Allstate agent, plaintiff ob-
tained a business package policy with respect to her apart-
ment house which was in effect from August 18, 1972 until
August 18, 1975, covering the time when both incidents
occurred. This policy replaced the Allstate homeowners

policy which Mrs. De Forte had previously owned. It contained a "Premises and Operations Limitation Endorsement" which provided insofar as pertinent: "Allstate will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence *and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the Named Insured conducted at or from the insured premises*" (emphasis supplied).

Several questions are presented: whether either occurrence is covered by the language in the business package policy and if so, whether plaintiff is barred from obtaining such coverage by failure to give timely written notice of the incident and to forward the suit papers promptly to Allstate.

The background of the first incident, that of November 22, 1972, is as follows: several months after obtaining her new policy, plaintiff noticed that a light bulb was burned out in the common hallway used by the tenants and decided to go out and buy new light bulbs. She testified that she took "Max" along to protect her car from being stolen. He was chained to a door, inside the car. On her way back home, the incident with the police officer occurred. The second incident has already been detailed.

Reasonableness is a test to be applied when there is doubt, as here, as to the intent expressed in the writing. A contract of insurance is no different from any other and must be construed in a fair and reasonable manner having regard to the risk and subject matter and the purpose of the policy (29 NY Jur, Insurance, § 605). Special rules such as liberal construction in favor of the insured and against the insurer who drew the contract and construction against exceptions and limitations and forfeitures of course, apply (29 NY Jur, Insurance, § 594). In considering these factors account should be taken of the reasonable expectation and purpose of the businessman who purchased the contract *(Harris v Allstate Ins. Co.,* 309 NY 72, 75).

The common test when interpreting the provision of an insurance policy is what meaning the words carry from

the viewpoint of an average person's understanding. A policy must be read in a practical way, not so as to revise and extend the risk but with a view toward what was reasonably intended when the policy was written by defendant and accepted by plaintiff. Thus, in the final analysis reasonableness is the test to be applied—"what meaning do the words convey as understood in their plain, popular and ordinary sense * * *—and from the viewpoint of the average man" *(Smith v Pennsylvania Gen. Ins. Co.,* 32 AD2d 854, affd 27 NY2d 830; 10 NY Jur, Contracts, § 205).

Careful analysis of the indorsement shows that Allstate agreed to pay on behalf of plaintiff sums which she must pay as damages caused by an occurrence "arising out of the ownership, maintenance or use of the insured premises". Both incidents—to buy light bulbs for a common hallway or to take a watchdog to get his distemper shot—arise out of "the ownership [or] maintenance" of the "insured premises". The policy continues—"and all operations necessary or incidental to the business of the Named Insured conducted at or from the insured premises". The two errands plaintiff went on are also reasonably necessary or incidental" to her business. The final phrase "conducted at or from the insured premises" refers to the "business of the Named Insured". The use of the word "at" rather than such words as "in" or "on" is significant because the latter words relate an occurrence more specifically to the premises than does the use of the more indefinite word "at". The use of the word "from" clearly relates to occurrences *not* on the premises. It would have been easy to provide that there was no coverage for occurrences "off the premises". For an exclusion of liability, not apparent from the words used, to be found to have been intended by the insurer, the responsibility must fall on the insurer to express it *(Sperling v Great Amer. Ind. Co.,* 7 NY2d 442, 447). This the defendant failed to do and, instead, the use of the broad phrase "at or from" the premises plainly includes coverage for these two occurrences which occurred away from the premises. Further, employing a test of reasonable expectation, the focus must be on plaintiff's purpose in going on these two errands. Both were necessary and incidental to her business and neither was a nonbusiness

frolic or tour—such as going to the beach or grocery shopping. Whether plaintiff chose to take or not to take her watchdog with her cannot serve as a relevant consideration in determining coverage. A business policy that protects the insured for occurrences away from the premises, incidental to the business, should be reasonably construed to provide coverage.

Several further reasons persuade us to this result. Not only is the policy to be strictly construed against Allstate *(Greaves v Public Serv. Mut. Ins. Co.,* 5 NY2d 120, 125) and liberally in favor of the insured *(Government Employees Ins. Co v Kligler,* 42 NY2d 863), but the attempt to use words of limitation in the nature of an exception to the primary coverage is also strictly construed against the insurer *(Green Bus Lines v Consolidated Mut. Ins. Co.,* 74 AD2d 136, 151). Finally, it is not the constituent acts which are to be tested—in this case the extraneous act of bringing "Max" need not be justified standing alone—but, rather, the entire "transaction as a whole" should be examined to determine whether coverage exists *(McGroarty v Great Amer. Ins. Co.,* 36 NY2d 358; *Marine Midland Servs. Corp. v Kosoff & Sons,* 60 AD2d 767). So viewed, the policy by its terms provides coverage for the two incidents in question.

Next we turn to the lack of written notice to Allstate. The facts reveal that plaintiff called her insurance agent promptly after the police officer was injured. He told her to call the claims office, which she did the following morning. On December 5, 1972 defendant recorded a conversation with plaintiff about this incident. Defendant informed plaintiff of its disclaimer by letter dated March 23, 1973 which stated "Under your general liability policy losses occurred off the actual premises are not covered" and "under your automobile policy this type of loss is not covered since your dog is not an insured under the definitions outlined in your policy". The summons and complaint from the policeman against plaintiff which had been sent to defendant 10 days earlier were returned in this March 26, 1973 letter.

Plaintiff reported the second incident, involving Mrs. Madden, to defendant's agent the day that it occurred and called the claims office as the agent instructed her.

On May 29, 1974 defendant recorded a conversation with plaintiff about the Madden incident. On that day defendant was ready to deny coverage and by letter dated June 26, 1974 coverage was denied. On March 10, 1975, plaintiff's attorney forwarded the summons and complaint to defendant in the Madden case and they were returned with a cover letter and disclaimer dated April 2, 1975.

Coverage should not be denied plaintiff because of an alleged failure to give *written* notice to defendant of the Mancini and Madden lawsuits pursuant to the terms of the policy. Defendant's business package policy requires written notice of occurrences with the following language: "In the event of an occurrence, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to Allstate or any of its authorized agents as soon as practicable."

Defendant admits that plaintiff reported both occurrences orally by telephone to its agent. Indeed, the defendant has a transcript dated December 5, 1972 of a conversation with plaintiff explaining the November 22, 1972 incident involving Officer Mancini. In the Madden matter, which occurred on May 24, 1974, the record shows a May 29, 1974 transcript of defendant's conversation with plaintiff describing this incident, an interoffice memorandum that there was no coverage, dated May 29, 1974, and a June 3, 1974 "Commercial Coverage Request and Analysis" form, all preceding the defendant's June 26, 1974 written disclaimer, which did not raise the issue of failure to give written notice. The first written notification of the Madden incident, as shown in the record, is a March 10, 1975 letter from plaintiff's attorney to defendant enclosing the summons and complaint. Defendant raised the issue of lack of written notice for the first time at the end of the trial, but made no attempt throughout the trial to prove that no written notice had been given, although it admitted receiving the oral notice. Inasmuch as defendant had the burden of proof on this issue, it may not succeed on plaintiff's alleged failure to give timely written notice.

Clearly, defendant Allstate had prompt actual notice of both events. Concededly, written notice was given 10 months after the Madden incident and about four months after the Mancini incident. Under the circumstances, such was "as soon as practicable". Defendant had sufficient notice to protect itself *(Mighty Midgets v Centennial Ins. Co.,* 47 NY2d 12; *State Farm Mut. Auto. Ins. Co. v Bush,* 46 AD2d 958, 959); and, in any event, the fact that its disclaimers were not made on the basis of a lack of written notice preclude the use of that defense to coverage *(General Acc. Ins. Group v Cirucci,* 46 NY2d 862).

We dispose quickly of the final question regarding the effect of plaintiff's failure immediately to forward all suit papers to defendant in the action by the City of Buffalo, as required by the insurance policy. Since plaintiff received these papers two and one-half years after defendant had disclaimed liability and refused to defend in the Mancini matter, we conclude that forwarding them would have been a useless act. We note further that plaintiff's attorney gave defendant notice of the existence of this derivative action at an examination before trial on April 29, 1976.

Therefore, defendant Allstate's policy affords insurance coverage to plaintiff for the Mancini and Madden incidents, including the suit by the City of Buffalo, and the judgment should be reversed and judgment entered in favor of plaintiff.

HANCOCK, JR., J. (dissenting). I must disagree with the majority's holding that the two dog bite incidents are occurrences which, as a matter of law, are covered by the policy.

The indorsement entitled "Premises and Operations Limitation Endorsement" affords liability coverage both for the insured's premises (121 Linwood Avenue) (for occurrences "arising out of the ownership, maintenance or use of the insured premises") and for the insured's business (landlord) (for occurrences arising out of "all operations necessary or incidental to the business of the Named Insured conducted at or from the insured premises") I cannot accept the majority's interpretation of the clause "conducted at or from the insured premises" as relating to the word "oc-

currences" and signifying an intention to afford coverage for occurrences "away from the premises". The phrase "conducted at or from the insured premises" clearly relates to and identifies the business to be covered by the policy as the business which the insured conducts "at or from" the premises and thus distinguishes that business from some other business the insured may be conducting. The sole question is whether the two dog bites are occurrences arising out of "the ownership, maintenance or use" of the insured premises or out of "operations necessary or incidental" to the insured's business conducted at or from those premises.

A plain reading of the "ownership, maintenance or use of the insured premises" provision leads to the conclusion that it covers only liability arising from activities directly related to the premises described in the declarations, and not to the business, which is not mentioned in the provision. This provision cannot reasonably be construed so broadly as to extend coverage to the insured on errands away from the premises which can arguably be said to have some tenuous connection with the premises, such as picking up light bulbs or grass seed or mailing a property tax payment. Rather, it should be read to protect the insured from potential liability to which she might be exposed by virtue of her ownership or use of the premises and possible faulty maintenance thereof (see, e.g., *Lowitt v Pearsall Chem. Corp. of Md.*, 242 Md 245). Even assuming that coverage under this section were not precluded as a matter of law, the court below could properly have found on this record as a matter of fact that neither occurrence arose from the "ownership, maintenance or use" of the premises (cf. *T. R. Serv. Sta. v Maryland Cas. Co.*, 22 AD2d 817).

The other possible source of coverage is the clause covering "all operations necessary or incidental to the business of the Named Insured conducted at or from the insured premises". This portion of the policy covers the business operations themselves and thus may cover occurrences arising from operations off the premises which are necessary or incidental to the business located on the insured premises. It could be argued that, as a matter of law, keeping a watchdog was not an "operation necessary or in-

cidental" to the business of being a landlord (cf. *Davis v Hartford Acc. & Ind. Co.*, 48 Misc 2d 135, mod 25 AD2d 604) or that, even if it were, the occurrences did not arise therefrom but from independent acts neither necessary nor incidental thereto (see *Drennan v Great Amer. Ins. Co.*, 27 AD2d 641). At the very least, these issues present factual questions which the court below in denying coverage after trial must have resolved against the insured (see *T. R. Serv. Sta. v Maryland Cas. Co.*, *supra*, holding that whether the maintenance of a watchdog on the insured premises was an operation necessary and incidental to the ownership, maintenance or use of the premises as an automobile service station is a question of fact). The court's determination is supported by the record. Elements of proof which would support a finding that having a watchdog was not necessary or incidental to the insured's business as a landlord include evidence that she had previously been a landlord for seven years without owning a dog and that she took the dog in the car with her to run errands, during which time she must have considered it unnecessary for him to be guarding the premises. I note that the court may have concluded that the insured's credibility on certain points was shaken based on, *inter alia*, inconsistencies between her testimony at the examination before trial and at trial, particularly with respect to the unreported burglary which she claims prompted her to get a watchdog. Even if it determined that keeping a watchdog was an "operation necessary or incidental" to the business, the court could properly have found that the Mancini incident was an occurrence arising not from the operation of having a watchdog on the premises but from the insured's act of taking the dog along with her (thus leaving the house unwatched), speeding, and allowing the dog to jump out of the car and bite the police officer—independent acts unrelated to the insured's business operations. Similarly, the court could have found that the insured's failure to control her dog while at the veterinarian's was an independent act unrelated to the keeping of a watchdog for a multiple dwelling.

The judgment should be affirmed.

DILLON, P. J., and SCHNEPP concur with CARDAMONE, J.;

HANCOCK, JR., and DENMAN, JJ., dissent and vote to affirm in an opinion by HANCOCK, JR., J.

Judgment reversed, on the law and facts, with costs, and judgment entered in favor of plaintiff.