HARTFORD CASUALTY INSURANCE COMPANY ET
AL. *v.* LITCHFIELD MUTUAL FIRE
INSURANCE COMPANY
(AC 23896)

Lavery, C. J., and DiPentima and Peters, Js.

Argued October 14—officially released December 2, 2003

*Philip F. von Kuhn,* for the appellants (plaintiffs).

*Joel J. Rottner,* with whom, on the brief, was *Kirby G. Huget,* for the appellee (defendant).

*Opinion*

PETERS, J. This case concerns a premises liability insurance policy.[1] The issue is whether the policy provides coverage for personal injury litigation arising out of a negligent use of the premises that is not linked to a defective condition in the premises themselves. The injured person was a child who was bitten on the premises by a dog that was owned and kept by the owner of the business and the premises. The trial court concluded that the owner did not have insurance coverage because the owner did not keep the dog on the premises for the purpose of protecting the premises. Accordingly,

---

[1] The defendant describes the commercial package that it issued to Wylie as an "Owners, Landlords & Tenant" policy, even though it is not so denominated in the policy itself. We describe it as a premises liability policy to distinguish it from a general liability policy.

it granted the insurer's motion for summary judgment. We disagree and reverse the judgment of the trial court.

The plaintiffs, Hartford Casualty Insurance Company (Hartford Casualty)[2] and Mitch Wylie (Wylie), the president of Strictly Dirt, Inc. (Strictly Dirt), filed a four count complaint against the defendant, Litchfield Mutual Fire Insurance Company. The plaintiffs sought a declaratory judgment that Wylie had coverage under one of two policies issued by the defendant, one in which the insured was Wylie and the other in which the insured was Strictly Dirt, a company wholly owned by Wylie. For the sake of convenience, we will focus on the terms of the Wylie policy.

The plaintiffs alleged that the policy the defendant issued to Wylie provided coverage for him as the owner of a dog that bit a business invitee on the business premises of Strictly Dirt, located at 309 Albany Turnpike, Canton.[3] They further alleged that the policy obligated the defendant to provide a defense for Wylie in the dog bite litigation and to indemnify both plaintiffs for costs incurred in settling that litigation.

The plaintiffs filed a motion for summary judgment with respect to the defendant's alleged duty to defend. The defendant then filed a cross motion for summary judgment, in which it denied that the Wylie policy provided coverage for the dog bite incident.[4]

---

[2] Hartford Casualty was a plaintiff because, pursuant to a homeowner's insurance policy that it had issued to Wylie, it had settled the underlying litigation between the victim of the dog bite and Wylie.

[3] The plaintiffs alleged that the defendant had a duty (1) to provide coverage for the damages in the dog bite case, (2) to provide a defense for Wylie in that case, (3) to reimburse Hartford Casualty for sums paid in settlement of the dog bite case because the defendant was the primary insurer and (4) to reimburse Hartford Casualty under principles of unjust enrichment.

[4] The defendant had earlier agreed to provide a defense for Strictly Dirt, with the reservation that it would withdraw its defense if Strictly Dirt was not the owner of the dog. The plaintiffs' complaint alleged that Wylie, not Strictly Dirt, was the owner of the dog.

The trial court granted the motion filed by the defendant and denied the motion filed by the plaintiffs. Without expressly addressing the other counts of the plaintiffs' complaint, the court rendered a judgment in favor of the defendant. The plaintiffs have appealed.

Because a summary judgment depends on a finding that there is no genuine issue of material fact, an appeal from such a judgment necessarily raises a question of law. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citation omitted; internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 450, 820 A.2d 258 (2003).

The question of law in this case concerns the proper interpretation of the premises insurance policy issued to Wylie by the defendant. The policy did not purport to cover any and all risks of injury that might arise in connection with Wylie's business, Strictly Dirt. Instead, the policy expressly limited coverage for bodily injury to "an occurrence [that arises] out of . . . use of the insured premises or operations that are . . . incidental to the insured premises." The gist of the plaintiffs' appeal is that the trial court interpreted this language too narrowly. We agree.

The trial court's memorandum of decision describes the underlying facts, which are undisputed. "On March 15, 1997, Hartford Casualty issued a homeowner's insurance policy to Wylie for a term of one year. On June 27, 1997, [the defendant] issued two insurance policies, a commercial 'premises only' policy to Wylie as owner of 309 Albany Turnpike and an identical policy to [Strictly Dirt] as lessee of the subject property." Wylie was the president and sole stockholder of Strictly Dirt,

a company engaged in the business of buying and selling dirt bikes, dirt bike parts and accessories.

"On February 21, 1998, two year old Samantha Bard was bitten by Wylie's dog while on the premises of [Strictly Dirt].[5] On February 14, 2000, Bard, through her parent and next friend, Stacey Busque; Stacey Busque individually; and Troy Bard filed a thirty count complaint against Wylie and [Strictly Dirt] seeking damages in connection with the dog bite incident. Fifteen counts were directed against Wylie as the owner and/or keeper of the dog and fifteen counts were directed against [Strictly Dirt] as the owner and/or keeper of the dog on its business premises. The defendant defended [Strictly Dirt] but refused to defend Wylie. Hartford Casualty defended Wylie and ultimately settled all claims against him. While the dog bite suit was pending, Hartford Casualty and Wylie filed the present declaratory judgment action seeking a judgment that [the defendant] had a duty to defend and indemnify Wylie in the dog bite suit, that the coverage under the two commercial policies issued by [the defendant] was primary and that the coverage under the homeowner's policy issued by Hartford Casualty was excess."

I

DUTY TO DEFEND

As our case law requires, the trial court decided the coverage issue with respect to the defendant's duty to defend Wylie by referring to the pleadings in the dog bite complaint. See, e.g., *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, 261 Conn. 37, 40–41, 801 A.2d 752 (2002); *Flint* v. *Universal Machine Co.*, 238 Conn. 637, 646, 679 A.2d 929 (1996). The complaint listed sev-

---

[5] The victim was on the premises because she was accompanying her father, who was purchasing certain items from Wylie in his dirt bike store.

eral ways in which Wylie's alleged negligence caused the dog bite to occur. By including a street address, the complaint identified the Strictly Dirt premises as the place at which the dog bite had occurred. It did not, however, allege that Wylie was the owner of the premises, that he was performing services for Strictly Dirt or that he kept the dog for the benefit of Strictly Dirt.

The trial court concluded that the absence of an express tie-in between the allegations of the complaint and the terms of the premises insurance policies was fatal to the plaintiffs' claim that the defendant had a duty to defend Wylie in the dog bite proceedings. The court held: "A careful reading of the dog bite complaint, however, does not support the plaintiffs' assertion that it contains allegations that Wylie was negligent while acting as an agent or employee of Strictly Dirt, Inc. Moreover, the subject policy states that where the insured is an organization, 'insured means you and all of your executive officers and directors, *but only while acting within the scope of their duties in connection with the business conducted on the insured premises* described on the Declarations. . . . Insured also includes . . . your employees, *for acts within the scope of their employment by you* . . . .' (Emphasis added.)" The court found that "uncontroverted evidence in the present action establishes that the dog was unrelated to Wylie's duties as an employee of Strictly Dirt, Inc., and therefore Wylie was not acting within the scope of his duties as an employee or director of Strictly Dirt, Inc., when his dog bit [the victim]." Accordingly, the court granted the defendant's motion for summary judgment.

Although we agree with the trial court that the defendant had no duty to defend Wylie, we do so on a different ground. Our Supreme Court has held that a determination of whether an insurer has such a duty is not necessarily confined to an examination of the allegations of

the underlying complaint. *Keithan* v. *Massachusetts Bonding & Ins. Co.*, 159 Conn. 128, 141–42, 267 A.2d 660 (1970). There thus may be cases in which an insurer has access to additional facts that supplement the complaint so as to trigger a duty to defend.

On the record in this case, however, the defendant had no reason to know anything other than the terms of the insurance policy and the allegations of the complaint. Wylie's affidavit in support of the plaintiffs' motion for summary judgment referenced his delivery of a copy of the complaint to the defendant and nothing else. Even though the defendant must be held to have recognized that the dog bite took place on insured premises, we are not persuaded that it should be held to have been aware of any linkage between Wylie's alleged negligence and the business conducted on the insured premises. For all the defendant knew or had reason to know, the dog might have been on the premises for Wylie's personal convenience for one day only.

We conclude, therefore, that, under the circumstances of this case, the defendant did not have a duty to defend Wylie. The trial court properly granted the defendant's motion for summary judgment on count two of the plaintiffs' complaint.

## II

## DUTY TO INDEMNIFY

Although the motions for summary judgment did not address the plaintiffs' claim for indemnity, the trial court also considered the merits of the plaintiffs' claim that the defendant had a duty to indemnify,[6] as alleged

[6] At the end of its opinion, the court stated the following. "The court finds, accordingly, that [the defendant] is entitled to summary judgment as a matter of law because there is no genuine issue of material fact as to whether the [premises liability] policy issued to Wylie or to Strictly Dirt, Inc., covered [the victim's] injuries."

in count one of the plaintiffs' complaint. The court's judgment was not restricted to count two. Because the parties' arguments to the court at trial and in their appellate briefs discuss the indemnity issue, we shall do likewise.[7]

The trial court concluded, for three reasons, that the defendant had no duty to indemnify the plaintiffs. It held that: (1) the language of the defendant's policy did not provide coverage for the dog bite unless the dog was a watchdog; (2) the factual record did not support Wylie's claim for coverage; and (3) the defendant's policy was secondary to the homeowner's policy issued to Wylie by Hartford Casualty. We will discuss separately why we disagree with each of the court's conclusions.

A

In its memorandum of decision, the trial court properly observed that a question of coverage under an insurance policy presents a question of law that must be answered according to the language of the policy. The court did not, however, refer to the legal principle that guides this question of law. "Our analysis of the language of the insurance contract is governed by the well established principle of insurance law that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters, and that ambiguities in contract documents are resolved against the party responsible

---

[7] We recognize that, ordinarily, the duty to defend an insured is broader than the duty to indemnify. See, e.g., *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 256, 819 A.2d 773 (2003). Ordinarily, all the relevant factual allegations are contained in the underlying complaint that triggers an obligation to defend. In this case, as noted, the dog bite victim had no occasion to allege the capacity in which the dog was on the premises. This is presumably the reason why the defendant has not argued, either in this court or at trial, that there is an irrebuttable linkage between the two counts in the plaintiffs' complaint.

for its drafting; the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view. . . . The premise behind the rule is simple. The party who actually does the writing of an instrument will presumably be guided by his own interests and goals in the transaction. He may choose shadings of expression, words more specific or more imprecise, according to the dictates of these interests. . . . A further, related rationale for the rule is that [s]ince one who speaks or writes, can by exactness of expression more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity are resolved in favor of the latter. . . . This canon, commonly styled contra proferentem, is more rigorously applied in the context of insurance contracts than in other contracts." (Citation omitted; internal quotation marks omitted.) *Israel* v. *State Farm Mutual Automobile Ins. Co.*, 259 Conn. 503, 508–509, 789 A.2d 974 (2002); see also 2 G. Couch, Insurance (3d Ed. 1995) § 22:11, pp. 22-23 through 22-29.

In this case, the policy naming Wylie as insured provided the following in coverage L: "BODILY INJURY LIABILITY/PROPERTY DAMAGE LIABILITY. We pay all sums which an insured becomes legally obligated to pay as damages due to bodily injury or property damage to which this insurance applies. The bodily injury or property damage must be caused by an occurrence and arise out of the ownership, maintenance or use of the insured premises or operations that are necessary or incidental to the insured premises." No Connecticut appellate court has had the occasion to interpret this language.

The trial court agreed with the defendant that coverage L should be interpreted narrowly so as to require an insured to demonstrate a direct relationship between the allegedly covered occurrence and the insured premises. In its view, the defendant's policy would have

provided coverage for the dog bite only if the dog's presence on the insured premises had been connected to a condition or use of the building *as a building*, that is to say if the dog had been there as a watchdog. Without such a limitation on coverage, the court observed, the premises policy would be indistinguishable from a commercial general liability policy, which would have provided coverage for liability arising from any aspect of the enterprise conducted within the insured premises.

The court based its limiting interpretation on 9 G. Couch, Insurance (3d Rev. 1997) § 132:59, p. 132-75, and on case law from other jurisdictions. We agree with the plaintiffs that these authorities do not support the court's interpretation of the policy.

We begin with an examination of the Couch treatise on insurance. The court's citation of Couch is accurate. The court failed, however, to note the context of Couch's statement. Later in § 132:59, Couch describes the nature of the insurance policy to which the section is addressed as a landlord-tenant insurance policy. Id., § 132:59, pp. 132-75 through 132-77. It is true that, under the common law of premises liability, a landlord is liable for injury to a tenant only if the landlord failed to exercise a reasonable degree of care with respect to a known or foreseeable condition of *the building* (or its immediate surroundings) that the property owner controlled. See *LaFlamme* v. *Dallessio*, 261 Conn. 247, 256–57, 802 A.2d 63 (2002). The fact that landlord-tenant insurance relates only to the building as a building does not establish that the premises policy at issue in this case is equally limited. Indeed, the defendant has not argued that its policy provided coverage only for litigation between Wylie and its tenant, Strictly Dirt. Whatever may be the proper characterization of the victim's presence on the Strictly Dirt premises in this case, it

is clear that she was not there as Wylie's tenant. Couch's discussion is, therefore, not illuminating.

The trial court also discussed the New York case of *De Forte* v. *Allstate Ins. Co.*, 81 App. Div. 2d 465, 442 N.Y.S.2d 307, appeal dismissed, 54 N.Y.2d 1027 (1981). In that case, a watchdog bit a police officer while the insured was off the insured premises to buy lightbulbs for the premises. The court held that the insured was entitled to coverage under a landlord-tenant insurance policy that obligated the insurer to pay for damages caused by an occurrence "arising out of the ownership, maintenance or use of the insured premises . . . and all operations necessary or incidental to the business of the Named Insured conducted at or from the insured premises." (Internal quotation marks omitted.) Id., 468. Focusing on the purpose of the insured's errand, the court concluded that her off the premises purchase of lightbulbs arose out of her ownership or maintenance of the insured premises and that the purchase was "reasonably necessary or incidental" to the insured's business. Id.

According to the defendant, *De Forte* supports the court's conclusion in this case because of the fact that the dog in that case was a watchdog. The *De Forte* decision, however, was not based on that fact. The insured had taken the dog with her to protect her *car* from being stolen. The injury caused by her dog was nonetheless covered because her errand was related to her business responsibilities as a landlord. Indeed, the court expressly deemphasized the significance of the watchdog to its ruling in favor of the insured. It stated: "Whether [the insured] chose to take or not to take her watchdog with her cannot serve as a relevant consideration in determining coverage." Id., 469.

On this record, the court's reliance on *De Forte* was misplaced. Despite the defendant's argument to the con-

trary, it was *not* implicit in the *De Forte* decision that coverage would have been denied in the absence of the relationship between the dog and the insured premises.

The other case on which the court relied is *Bewig* v. *State Farm Fire & Casualty Ins. Co.*, 848 S.W.2d 521, 522 (Mo. App. 1993), which denied coverage for a dog bite caused by a pet dog owned by someone *other* than the insured. We are not persuaded that, under those circumstances, it was significant that the dog in question was not a watchdog. In this case, it is conceded that Wylie was the insured, the owner of the insured premises and the owner of the dog that bit the underlying claimant.

Even though we conclude that the court did not adduce persuasive support for its limiting interpretation of the insurance policy, we recognize that this conclusion is not sufficient for the plaintiffs to prevail on appeal. It was and remains their responsibility to establish that, properly interpreted, the policy provided coverage for the injury caused by Wylie's dog.

The plaintiffs acknowledge that there are no Connecticut cases that dispositively interpret Wylie's premises insurance policy in their favor. They maintain, nonetheless, that the signposts along the road point to a broad interpretation of the phrase "use of the insured premises." We agree.

The plaintiffs observe that the trial court's interpretation of the premises liability policy did not take into account the definition of the term "insured" in the Wylie policy. The policy states: "Insured—If shown on the Declarations as an 'individual,' insured means you and your spouse, but only with respect to *the conduct of a business* on the insured premises of which you are the sole owner." (Emphasis added.) As in *De Forte*, they claim that, if the dog was on the premises for business purposes, Wylie was entitled to coverage.

The plaintiffs' argument is supported by our reasoning in *Edelman* v. *Pacific Employers Ins. Co.*, 53 Conn. App. 54, 728 A.2d 531, cert. denied, 249 Conn. 918, 733 A.2d 229 (1999). That case involved the interpretation of a premises insurance policy that provided coverage for an innkeeper for injuries "arising out of the . . . use of . . . the premises . . . ." (Internal quotation marks omitted.) Id., 59.[8] It arose in the context of an assault of a state trooper by an innkeeper who was resisting arrest following a domestic dispute. Id., 56.

Although we recognized that this phrase was a limitation on coverage, we held that the term "use" should be accorded its general meaning. We cited with approval the dictionary meaning of that term to encompass "the legal enjoyment of property that consists in its employment, occupation, exercise, or practice." (Internal quotation marks omitted.) Id., 61. Instead of limiting the breadth of this definition, we concluded, in accordance with *Alderman* v. *Hanover Ins. Group*, 169 Conn. 603, 607, 363 A.2d 1102 (1975), that an insured "uses" property if he "puts it to his own service or to the purpose for which it was ordinarily intended." *Edelman* v. *Pacific Employers Ins. Co.*, supra, 53 Conn. App. 61. On the facts, we concluded that insurance coverage had properly been denied because the innkeeper's assault of a trooper was not an ordinarily intended use of the insured premises. Id.

*Edelman* supports the plaintiffs' interpretation of "use of the insured premises" in this case. In light of the policy's definition of the term "insured," Wylie's use of the premises for business purposes was precisely the use of the property that was contemplated by the parties. The defendant has not argued that the victim was on the premises for any use unrelated to Wylie's business.

---

[8] The defendant acknowledges that the relevant text in *Edelman* is similar to the relevant text in the Wylie policy.

Connecticut case law that broadly interprets analogous provisions in automobile insurance policies lends further support to the plaintiffs' interpretation of the "use of the insured premises" clause in Wylie's policy. In those cases, our Supreme Court has interpreted the term "use" as including "all proper uses of the vehicle" *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, supra, 261 Conn. 43 (insurance coverage for sexual assault of student after departure from school bus). To establish use, "it is sufficient to show only that the accident or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' the use of the automobile . . . ." *Hogle* v. *Hogle*, 167 Conn. 572, 577, 356 A.2d 172 (1975) (homeowner's policy exclusion for accidents caused by " 'use' of an automobile" effective to deny coverage for automobile accident caused by dog's interference with driver).

Furthermore, the plaintiffs' interpretation of "use of the insured premises" is consistent with the underlying common law of premises liability. Under that law, a retail store owner is liable to a business invitee who is injured as a result of an unsafe condition on the premises of which the owner had actual or constructive notice. The unsafe condition need not arise out of a defect in the premises themselves, but may consist of a defect in the use of the building, such as a dangerous display of merchandise on the premises. See, e.g., *Meek* v. *Wal-Mart Stores, Inc.*, 72 Conn. App. 467, 474, 806 A.2d 546, cert. denied, 262 Conn. 912, 810 A.2d 278 (2002); see also 2 Restatement (Second), Torts § 343, pp. 215–18 (1965).

It is reasonable to assume in this case that Wylie understood the defendant's premises policy to provide him with protection from premises liability arising out of his business use of the property. If, hypothetically, the victim in this case had been injured by a dirt bike that Wylie had improperly stored on the insured prem-

ises, Wylie would have been liable to her under the law of premises liability. See *Meek* v. *Wal-Mart Stores, Inc.*, supra, 72 Conn. App. 467. Even though the injury would not have arisen out of a defect in the premises as a building, it would have arisen out of a "use of the premises" as that phrase was defined in *Edelman*. It follows that, if Wylie's dog was on the premises for the business purpose for which Wylie bought premises insurance, Wylie was entitled to coverage under the defendant's policy.

The defendant argues for the opposite result on the basis of a series of cases from other jurisdictions. It is true that, in those cases, construing language identical to that in the present policy, courts have limited coverage to injuries arising out of the premises as premises. We need not decide whether we would agree with the conclusions reached in those cases because each of them is factually distinguishable. Several of the cases cited involve claims for coverage stemming from alleged misconduct that occurred at a location other than the insured premises. In *Chesapeake Physicians* v. *Home Ins.*, 92 Md. App. 385, 608 A.2d 822, cert. denied, 328 Md. 446, 614 A.2d 973 (1992), a policyholder sought coverage for a tort action alleging negligent or intentional misrepresentations by the insured in the course of the insured's business. Id., 388–89. That claim had no physical relationship to the insured premises and was unrelated to the purpose for which the premises were insured. In *American Empire Supply Lines Ins. Co.* v. *Bay Area Cab Lease, Inc.*, 756 F. Sup. 1287 (N.D. Cal. 1991), coverage for the business office of a cab company was held not to include coverage for a sexual assault committed off the premises, in a cab owned by the insured. Id., 1288–90. In *Harvey* v. *Mr. Lynn's, Inc.*, 416 So. 2d 960, 962 (La. App. 1982), premises coverage for an office did not encompass alleged negligence in the staging of a fashion show elsewhere. In *Shelter*

*Mutual Ins. Co.* v. *Shepherd*, 928 S.W.2d 6, 8–9 (Mo. App. 1996), coverage was denied for alleged attorney malpractice unrelated to the insured premises. None of these cases is a persuasive precedent for a coverage dispute about an injury that concededly occurred on the insured premises.

The defendant also cites *Reznichek* v. *Grall*, 150 Wis. 2d 752, 442 N.W.2d 545 (Wis. App. 1989), in which coverage was denied for an injury that, while it occurred on the insured premises, involved alleged misconduct unrelated to the purpose of premises liability insurance. Id., 754. The insured had caused the victim to become infected with herpes. Id. It was conceded that the sexual transmission of disease was neither necessary nor incidental to the ownership, maintenance or use of the insured premises. Id., 756. Denial of coverage under those circumstances is entirely consistent with our holding in *Edelman* v. *Pacific Employers Ins. Co.,* supra, 53 Conn. App. 54. *Reznichek* is not relevant to this case, in which the victim was on the premises for a legitimate business purpose.

We conclude that the premises liability policy that the defendant issued to Wylie included coverage for injuries that occurred on the insured premises whether or not the injuries were related to the premises as premises. In our view, if Wylie's dog was on the premises for a business purpose, Wylie's negligent failure to control his dog was incidental to his "ownership, maintenance or use of the insured premises . . . ." The policy does not require more than that.

B

The Reason for the Dog's Presence at the Insured
Premises

We now turn to the question of whether the plaintiffs have established, on the factual record, that Wylie's dog

was on the premises of Strictly Dirt for a business purpose rather than for Wylie's personal pleasure. No matter how broadly we interpret the phrase "use of the premises," we recognize that Wylie was insured only for business that Strictly Dirt conducted there. See id. While coverage should not have been denied because the dog was not a watchdog, it would properly have been denied if the dog was no more than Wylie's pet.

In its memorandum of decision, the trial court addressed this question and concluded that the dog was on the insured premises only for Wylie's personal pleasure. The court stated: "In the present action, the evidence establishes that the dog was not used for security purposes. Neither was the dog incidental to the ownership, maintenance or use of the insured premises or to the operations that were necessary or incidental to the insured premises. In a November 12, 2001 deposition taken in connection with this action, Wylie testified that the dog . . . was his personal dog and was not owned or kept by Strictly Dirt, Inc. He testified that the dog accompanied him to work regularly, but was not a watchdog for the business or for the premises. Wylie also testified that his presence at Strictly Dirt, Inc., on the day of the dog attack was related entirely to his position as an employee of Strictly Dirt, Inc., and was unrelated to his role or responsibilities as owner-landlord of the premises."

On the basis of these recited facts, the court concluded that "the injury for which coverage is sought did not arise out of Wylie's ownership, maintenance or use of the insured premises and therefore was not covered by the [premises liability] policy issued to Wylie personally as owner of the premises." It is telling that the court supported its reasoning by citing *Bewig* v. *State Farm Fire & Casualty Ins. Co.*, supra, 848 S.W.2d 522, in which coverage was denied, at least in part, because the dog that bit the victim was a pet dog.

The trial court's recital of the factual record was, however, incomplete. The court overlooked those parts of Wylie's deposition in which he testified that the dog was on the premises for commercial purposes. Wylie stated that he took the dog to work because customers liked the dog. He had approved the use of a picture of the dog on a Strictly Dirt promotional sign facing Route 44. He viewed the dog's presence as a benefit to the business of Strictly Dirt and would have stopped bringing the dog "[i]f he wasn't a benefit . . . ." Wylie's testimony establishes that the dog bite incident was "incidental" to Wylie's business use of the insured premises.

In requesting summary judgment, the defendant conceded that there were no material factual disputes underlying the coverage dispute. Although it had an unrestricted opportunity to question Wylie at his deposition, it elicited nothing to contradict Wylie's testimony about the reason for the dog's presence on the insured premises.

We conclude therefore that, because the dog was on the premises for a business purpose, and because the victim was on the premises as a business invitee, the defendant was obligated to reimburse the plaintiffs for the costs incurred as a result of Wylie's negligent failure to supervise his dog. Harking back to the language of the policy, we conclude that these costs were "sums which [Wylie became] legally obligated to pay as damages due to bodily injury . . . to which this insurance applies. The bodily injury . . . [was] caused by an occurrence and . . . [arose] out of the . . . use of the insured premises or operations that are . . . incidental to the insured premises."

## C

The final issue that we must address is whether the coverage afforded to Wylie by the defendant's insurance

policy is primary or secondary to Wylie's Hartford Casualty homeowner's policy. In light of its resolution of the liability issues, the trial court had no occasion to consider the relationship between the two policies. We agree with the plaintiffs that the defendant's policy was primary.

On this issue, Wylie's policy with the defendant meshes seamlessly with Wylie's policy with Hartford Casualty. Each makes the defendant's coverage primary and the Hartford Casualty coverage excess. The defendant's policy, in a section denominated "Insurance Under More Than One Policy," states: "Insurance under this Commercial Liability Coverage is primary . . . ."[9] The Hartford Casualty policy, in a section denominated "Other Insurance," states: "This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy."

Although, on their face, these provisions unambiguously impose on the defendant the duty to reimburse the plaintiff Hartford Casualty for its costs of $236,956.72, the defendant would have us ignore the language of the policies. The defendant maintains that, because of Hartford Casualty's decision to settle the dog bite litigation, its own policy must be construed to have provided only excess liability coverage.

According to the defendant, if the mere presence of the dog on the Strictly Dirt premises constituted "use" of the premises, the resulting injury would have been excluded from Hartford Casualty coverage because that policy did not cover "bodily injury . . . [a]rising out of a premises . . . [o]wned by the insured . . . that

[9] Although this provision is subject to two exceptions, neither is applicable under the circumstances of this case. One exception is fire insurance for premises rented to the insured. The other is insurance for the maintenance or use of aircraft, motorized vehicles or watercraft.

is not an insured location . . . ." In light of this exclusion, the defendant maintains that Hartford Casualty could not have settled the dog bite litigation without impliedly conceding that its coverage was primary rather than excess to that provided in the defendant's policy. We disagree.

The flaw in the defendant's argument is that we do not know why Hartford Casualty settled. The defendant has provided no evidentiary support for its analysis of the settlement. It is equally plausible, however, that Hartford Casualty settled because it interpreted its policy exclusion to apply only to ownership of other homeowner property, such as a vacation home. There may well have been other considerations as well.

The hypothetical argument posited by the defendant cannot overcome the unambiguous text of its own policy and that issued by Hartford Casualty. The defendant's policy categorically establishes the primacy of the premises policy that it issued to Wylie.

We conclude, therefore, that the trial court improperly denied the plaintiffs' motion for summary judgment and improperly granted the defendant's motion for summary judgment. The plaintiffs have established that, pursuant to the premises liability insurance policy that the defendant issued to Wylie, they have a right to indemnification for the costs incurred in settling the underlying dog bite litigation. The dog bite took place on Strictly Dirt's business premises at a time when Wylie, the owner of the premises and of Strictly Dirt, was using the premises for business purposes as contemplated by the insurance policy. The dog was on the premises for business purposes. The dog bite litigation was, therefore, as the policy required, "caused by an occurrence [that arose] out of the ownership . . . or use of the insured premises . . . that [was] necessary or incidental to the insured premises."

The judgment is reversed in part and the case is remanded with direction to grant the motion for summary judgment filed by the plaintiffs and to deny the motion for summary judgment filed by the defendant.

In this opinion the other judges concurred.