■ JOHN P. PROPIS et al., Respondents-Appellants, v FIRE-MAN'S FUND INSURANCE COMPANY et al., Appellants-Respondents. MICHAEL W. HALLORAN, Respondent-Appellant, v FIRE-MAN'S FUND INSURANCE COMPANY, Appellant-Respondent.— Order and judgment unanimously modified, on the law, and, as modified, affirmed without costs, in accordance with the following memorandum: Defendants are insurers under a "Life Underwriter's Professional Liability" policy issued to Northwestern Mutual Life Insurance Company (Northwestern) to cover its life underwriters. Plaintiffs John P. Propis and John P. Propis & Associates, Inc. (Associates) were the general agent of Northwestern in Buffalo until June 1, 1981, when they assumed the status of special agent. Plaintiff Michael W. Halloran (Halloran) became the general agent in Buffalo on June 1, 1981 succeeding Associates and, during the remaining relevant period herein, continued as such. In separate declaratory judgment actions both Associates and Halloran seek declarations that defendants are obligated to furnish them

with a defense in separate lawsuits brought against them by Robert N. Young who, during different periods of time, was a special agent under contract with both the Associates and the Halloran general agencies. From an order and judgment which, among other things, grants both plaintiffs' motions for partial summary judgment, denies defendants' cross motions for summary judgment, and declares that defendants are obligated to furnish defenses in both of the Young actions, defendants appeal.

We hold that defendants are not obligated to indemnify or furnish a defense in the action against Halloran. Accordingly, the judgment should be modified to contain such a declaration. Halloran's motion for partial summary judgment is denied and the cross motion of defendants as to Halloran granted. Under the policy as it pertains to Halloran, the insurers agree to indemnify the insured because of any claim arising out of any "negligent act, error or omission in rendering or failing to render professional services". The term "professional services" is defined in the policy as "those services, activities and hazards, performed by the insured fee based or not, for insured[']s activities as a life underwriter, including but not limited to:

"(A) Insured's services rendered on a fee basis involving insured and non-insured plans, provided the majority of the insured's income is not from these means;

"(B) Insured's activities in consulting on self-insured plans, for insured and non-insured plans, provided the majority of the insured's income is not from these means;

"(C) Insured's activities involving split-funded plans, for insured and non-insured plans, provided the majority of the insured's income is not from these means;

"(D) Insured's services and activities involving third-party administration for insured and non-insured plans, provided the majority of the insured's income is not from these means;

"(E) Insured's services and activities involving claims administration, provided this is not a full-time activity;

"(F) Actuarial services provided by the insured provided this is not a full-time activity."

All of the causes of actions against Halloran arise out of Young's employment as special agent by the Halloran general agency and are based entirely on what Halloran allegedly did or said in hiring Young as special agent and discharging him some months later. For the most part, the complaint describes intentional conduct relating to claimed misrepresentations

and wrongful actions at the time of Young's discharge. Two of the causes of action (the second and third), however, contain attributes of a negligence claim, and we agree with plaintiff Halloran that, construing the complaint liberally as we must (*see, Ruder & Finn v Seaboard Sur. Co.,* 52 NY2d 663, 670), it can be read, at least as to these two causes of action, as alleging a "negligent act, error or omission". But the complaint fails to meet another requirement for coverage; it does not allege that the act or omission complained of was "in rendering or failing to render professional services", and it is for this reason that we reverse.

While the duty of the insurer to defend is broader than its duty to indemnify (*see, Ruder & Finn v Seaboard Sur. Co., supra; Goldberg v Lumber Mut. Cas. Ins. Co.,* 297 NY 148, 154) and the policy must be construed liberally in favor of the insured and strictly against the insurer (*see, Schiff Assoc. v Flack,* 51 NY2d 692, 699; *Government Employees Ins. Co. v Kligler,* 42 NY2d 863, 864), where it can be concluded as a matter of law that there is no possible factual or legal basis under which the insurer might eventually be found obligated to indemnify the insured, the insurer may properly decline to provide a defense (*see, Spoor-Lasher Co. v Aetna Cas. & Sur. Co.,* 39 NY2d 875, 876). Here, the governing case is *Schiff Assoc. v Flack* (*supra,* p 700), where the court, in holding that the insurers under a professional indemnity policy were not obligated to defend a life insurance agent and employee benefit consultant, stated: "The renting of an office, the engagement of employees, arrangements to expand the size of one's activities, these may all have some connection with a covered business or profession. But, while they may set the stage for the performance of business or professional services, they are not the professional activities contemplated by this special coverage. *An errors and omissions policy is intended to insure a member of a designated calling against liability arising out of the mistakes inherent in the practice of that particular profession or business* (*see Grieb v Citizens Cas. Co.,* 33 Wis 2d 552)" (emphasis added).

In the complaint against Halloran, the alleged acts relating to the hiring and firing of Young are nonprofessional business activities which "set the stage for the performance" but which do not involve professional services to clients and are not themselves acts "inherent in the practice of [the] particular profession"—underwriting (*Schiff Assoc. v Flack, supra,* p 700). We reject plaintiff Halloran's contention that there are significant differences in the definitions of professional services in

the Schiff policy and the policy here. On the contrary, the policy in issue is even more specifically limited than the Schiff policy to coverage of services which an insured would ordinarily render to a customer or client in the performance of its profession, for it contains additional provisions which unmistakably define the very sort of activities of a life underwriter embraced in the term "professional services" by specifying (in subparagraphs [A] through [F] following the general definition of "professional services") six separate categories of services, all of which are services typically performed by a life underwriter in the performance of his profession (see generally, 22 NY Jur 2d, Contracts, § 223 [1982] pertaining to rule of ejusdem generis as applied in the construction of contracts).

We affirm the order and judgment, insofar as it pertains to the defendants' obligation to defend Associates. Contrary to Associates' position in their cross appeal, the court correctly determined that they are entitled to recover their costs and disbursements and reasonable attorney's fees incurred in defending the Young action but not their attorney's fees and other expenses in maintaining the instant action against the insurers (see, Mighty Midgets v Centennial Ins. Co., 47 NY2d 12, 21). We need not decide whether there is coverage for Associates for breach of duty as life underwriter under insuring clause (2) (A) of the policy prior to the amendment on June 1, 1981, for we find that Associates are entitled to a defense under "Insuring Clause" (2) (C) ("Personal injury liability" in the policy after the June 1, 1981 amendment. "Personal injury liability", as defined in the policy after the amendment, includes liability for publication or utterance "of a libel and slander or of other disparaging or defaming material" (emphasis added). Young's third and fourth causes of action contain allegations to the effect that Associates after June 1, 1981, when they were no longer general agent but had the status of special agent, interfered with Young's business activities and damaged him by "contacting and communicating with others" and that Associates maliciously interfered with Young's new contract with Halloran and Northwestern and induced them to discharge Young. We note that the material published or uttered need not, to be the basis of a covered claim under (2) (B), constitute a libel or slander or be legally defamatory or even allegedly false. (Paragraph [B] of the definition of "Personal Injury" lists the covered publications or utterances in the disjunctive, i.e., "of a libel and slander or of other disparaging or defaming material" [emphasis added].) It is enough if the insured has published or uttered

"disparaging material"—material which is derogatory or belittling, and we find that the contacts and communications which allegedly damaged Young could be "disparaging material" as the term is used in the policy. (Appeals from order and judgment of Supreme Court, Erie County, Ostrowski, J.—summary judgment.) Present—Hancock, Jr., J. P., Doerr, Denman, O'Donnell and Pine, JJ.