AMERICAN STATES INSURANCE COMPANY, Plaintiff-Appellant, v. HARVEY KOLOMS *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—95—2057

Opinion filed May 16, 1996.

· McKenna, Storer, Rowe, White & Farrug, of Chicago (Richard M. Clark and James P. DeNardo, of counsel), and Bingham, Summers, Welsh & Spilman, of Indiana (Dennis F. Cantrell and James M. Hinshaw, of counsel), for appellant.

Schiff, Hardin & Waite, of Chicago (Jill B. Berkeley and Kevin L. Kolton, of counsel), for appellees.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, American States Insurance Company (American), appeals from a grant of summary judgment in favor of defendants, Harvey and Nina Koloms, and from the denial of its cross-motion for summary judgment. We exercise jurisdiction pursuant to Supreme Court Rule 304(a). 134 Ill. 2d R. 304(a).

American issued a commercial general liability insurance policy (policy) covering a two-story commercial structure located in Lincolnshire, Illinois (building). The building contained stores on the first floor and business offices on the second floor. The Kolomses were the

beneficial owners of the building and were named as additional insureds in the policy.

A number of individuals employed by Sales Consultants of Lincolnshire, a tenant in the building, asserted claims against the Kolomses and others for injuries allegedly sustained on September 18, 1990, when they inhaled carbon monoxide and other noxious fumes and gases emitted from a faulty furnace in the building. The Kolomses sought coverage under the policy for the claims asserted against them. Acting under a reservation of rights, American provided the Kolomses with a defense to the liability claims. The reservation of rights was based upon a pollution exclusion clause contained in the policy, which reads in pertinent part as follows:

"This insurance does not apply to:
* * *

f. (1) 'Bodily injury' or 'property damage' arising out of the actual, alleged, or threatened discharge, dispersal, release, or escape of pollutants:

(a) At or from premises you own, rent, or occupy;
* * *

Pollutants mean any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, or reclaimed."

The policy also contained an amendment providing that subparagraph (a) of paragraph (1) of the pollution exclusion clause did "not apply to 'bodily injury' or 'property damage' caused by heat, smoke or fumes from a hostile fire." The amendment defined a hostile fire as "one which becomes uncontrollable or breaks out from where it was intended to be."

Relying on the pollution exclusion clause, American subsequently filed the instant declaratory judgment action asserting, *inter alia*, that it owed no duty to defend or indemnify the Kolomses in connection with the claims asserted against them. American and the Kolomses filed cross-motions for summary judgment. The trial court granted the Kolomses' motion, denied American States' motion, and inserted Rule 304(a) findings in its order. This appeal followed.

■ Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1994); *Carruthers v. B.C. Christopher & Co.*, 57 Ill. 2d 376, 313 N.E.2d 457 (1974). Since the issue presented in a summary judgment proceeding is one of law, we apply a *de novo* standard of review. *In re Estate of Hoover*, 155 Ill. 2d 402, 615 N.E.2d 736 (1993). By filing cross-motions for summary judg-

ment, the parties invite the court to decide the issues presented in the action as questions of law. *Allen v. Meyer*, 14 Ill. 2d 284, 152 N.E.2d 576 (1958). However, the mere filing of cross-motions cannot confer upon the court the power to grant a summary judgment to one of the parties where genuine issues remain precluding summary judgment in favor of either party. *Perlman v. Time, Inc.*, 64 Ill. App. 3d 190, 380 N.E.2d 1040 (1978).

■ The primary issue on appeal is whether the claims asserted against the Kolomses for injuries caused by fumes emitted from the building furnace fall unambiguously within the pollution exclusion clause of the policy. The law in this state relating to the construction of insurance policies is well settled. Our supreme court in *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 607 N.E.2d 1204 (1992), held:

> "The construction of an insurance policy's provisions is a question of law. [Citations.] In construing an insurance policy, the court must ascertain the intent of the parties to the contract. [Citations.] To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole [citations], with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract [citation]. If the words in the policy are unambiguous, a court must afford them their *plain, ordinary, and popular meaning*. [Citations.] However, if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous [citation] and will be construed in favor of the insured and against the insurer who drafted the policy [citations]." (Emphasis in original.) 154 Ill. 2d at 108-09.

American argues that the plain and ordinary meaning of its pollution exclusion clause unambiguously bars coverage for injuries arising out of the escape of carbon monoxide fumes. As indicated, the policy excludes coverage for injuries arising out of the "discharge, dispersal, release, or escape of pollutants." Pollutants are defined in the policy to include any gaseous irritant or contaminant, including fumes. American contends that carbon monoxide is a gaseous irritant and, thus, injuries caused by exposure to its fumes are excluded from coverage under the policy. The Kolomses contend that carbon monoxide leaking into the building from a faulty furnace is not an "irritant" or "contaminant" within the plain and ordinary meaning of those terms as used in the policy. They argue that this conclusion is supported by the nature and purpose of the insurance policy in issue and by the type of property insured.

Since a literal reading of the clause at issue supports the interpretation favored by American, our first task is to determine if the

clause is ambiguous. In that regard, we find no need to recount the history and purpose of pollution exclusion clauses in liability insurance policies, a task painstakingly undertaken in *West American Insurance Co. v. Tufco Flooring East, Inc.*, 104 N.C. App. 312, 409 S.E.2d 692 (1991). We do think it important, however, to point out that our research revealed a multitude of judicial interpretations of the very policy language at issue here. Several courts have ruled the clause ambiguous due to its breadth and lack of precision in defining "pollutants." See *Minerva Enterprises, Inc. v. Bituminous Casualty Corp.*, 312 Ark. 128, 851 S.W.2d 403 (1993); *Westchester Fire Insurance Co. v. Pittsburg*, 794 F. Supp 353 (D. Kan. 1992), *aff'd sub nom. Pennsylvania National Mutual Casualty Insurance Co. v. City of Pittsburg*, 987 F.2d 1516 (10th Cir. 1993). Others have ruled that the clause applies only to active industrial polluters (see *Thompson v. Temple*, 580 So. 2d 1133 (La. App. 1991)), the improper disposal or containment of hazardous waste (see *Atlantic Mutual Insurance Co. v. McFadden*, 413 Mass. 90, 595 N.E.2d 762 (1992)), or the discharge of pollutants into the environment (see *West American Insurance Co.*, 104 N.C. App. 312, 409 S.E.2d 692). Still others have found the clause to be wholly unambiguous and have enforced it in circumstances involving the unintended or unanticipated release of substances falling within the definition of a pollutant as contained within the clause. See *American States Insurance Co. v. Zippro Construction Co.*, 216 Ga. App. 499, 455 S.E.2d 133 (1995); *Essex Insurance Co. v. Tri-Town Corp.*, 863 F. Supp. 38 (D. Mass. 1994); *American States Insurance Co. v. F.H.S., Inc.*, 843 F. Supp. 187 (S.D. Miss. 1994).

In addition to the above cases, the parties have relied upon several decisions from other jurisdictions in cases presenting circumstances almost identical to those in the case at bar and involving the interpretation of pollution exclusion clauses with terms similar to those used in the clause in this case. American has cited *Bernhardt v. Hartford Fire Insurance Co.*, 102 Md. App. 45, 648 A.2d 1047 (1994), *cert. granted*, 337 Md. 641, 655 A.2d 400 (1995). The Kolomses have cited *Stoney Run Co. v. Prudential-LMI Commercial Insurance Co.*, 47 F.3d 34 (2d Cir. 1995), and *Regional Bank v. St. Paul Fire & Marine Insurance Co.*, 35 F.3d 494 (10th Cir. 1994). Needless to say, each of the parties has either criticized or attempted to distinguish the cases relied upon by the other.

The *Bernhardt* court found that carbon monoxide was a "gaseous irritant" or "contaminant" within the clear language of the policy, and went on to hold, "We are unable to say a person of ordinary intelligence reading the language of this absolute pollution exclusion would conclude that it did not apply to the facts of this case." *Bern-*

*hardt*, 102 Md. App. at 55, 648 A.2d at 1051. On the other hand, in *Stoney Run* and *Regional Bank*, the courts found the exclusion clause to be ambiguous when applied to carbon monoxide emitted from a faulty furnace, reasoning that a person of ordinary intelligence might well understand it to be a pollutant when discharged in an industrial or environmental setting, but not when emitted from a malfunctioning heater. *Stoney Run*, 47 F.3d at 39; *Regional Bank*, 35 F.3d at 498. We believe that the reasoning employed by the courts construing exclusion clauses comparable to that at bar, as well as the conflicting interpretations that have resulted from those cases, lends some credence to the proposition that the clause is ambiguous.

■ The meaning of undefined terms in an insurance policy is ascertained by affording the terms their plain, ordinary and popular meanings; that is, the meaning the terms convey to the normal and reasonable person with usual and ordinary understanding. *Outboard Marine*, 154 Ill. 2d at 115. We do not, however, interpret terms in a factual vacuum, but instead view them in the context in which they appear and with due regard to the factual setting surrounding the issuance of the insurance policy. *Dungey v. Haines & Britton, Ltd.*, 155 Ill. 2d 329, 614 N.E.2d 1205 (1993); *Glidden v. Farmers Automobile Insurance Ass'n*, 57 Ill. 2d 330, 312 N.E.2d 247 (1974).

■ In this case, American intended to offer and the Kolomses intended to purchase a comprehensive policy of liability insurance protecting them from a broad scope of risks, including those for bodily injury caused by an "occurrence" at the building, a commercial structure containing stores and offices. The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same harmful conditions." It is in that factual context that we must examine the exclusion clause contained in the policy.

As noted, the policy excludes coverage for the "discharge, dispersal, release or escape of pollutants," without defining the terms "discharge," "dispersal," "release," or "escape." A number of courts have observed that such words employed with reference to a pollutant are terms of art used in environmental law to indicate the discharge or release of hazardous material into the environment. *West American Insurance Co.*, 104 N.C. App. 312, 409 S.E.2d 692; see also *Atlantic Mutual Insurance Co. v. McFadden*, 413 Mass. 90, 595 N.E.2d 762 (1992); *Stoney Run Co.*, 47 F.3d at 37. Our supreme court, in construing these terms in a pollution exclusion clause phrased slightly differently from that at bar, observed that these particular words "all add contours to the general concept of a release of an environmentally toxic pollutant." *Outboard Marine Corp.*, 154 Ill. 2d

at 124. Interestingly, nowhere do the words "environmentally" or "environment" appear in the clause considered in that case. See *Outboard Marine Corp.*, 154 Ill. 2d at 118.

Additionally, the policy defines "pollutants" as "any solid, liquid, gaseous or thermal *irritant* or *contaminant*." (Emphasis added.) But as the court observed in *Regional Bank*, 35 F.3d at 498 (relying upon the holdings in *Pipefitters Welfare Education Fund v. Westchester Fire Insurance Co.*, 976 F.2d 1037 (7th Cir. 1992), and *Westchester Fire Insurance Co. v. City of Pittsburg*, 768 F. Supp. 1463 (D. Kan. 1991)), the terms "irritant" and "contaminant" as used in a pollution exclusion clause cannot be read in isolation, as the terms are virtually boundless. The court went on to hold that since, as in this case, these terms are not defined in the policy of insurance, they must be construed in the context in which they are used, namely, to define a pollutant. The court concluded:

> "While a reasonable person of ordinary intelligence might well understand carbon monoxide is a pollutant when it is emitted in an industrial or environmental setting, an ordinary policyholder would not reasonably characterize carbon monoxide emitted from a residential heater which malfunctioned as 'pollution.' It seems far more reasonable that a policyholder would understand the exclusion as being limited to irritants and contaminants commonly thought of as pollution and not as applying to every possible irritant or contaminant imaginable." *Regional Bank*, 35 F.3d at 498.

Our task is to determine whether American's pollution exclusion clause is subject to a reasonable interpretation other than that advanced by American, or whether it is ambiguous as applied to the facts of this case. After consideration of the language of the clause, the wide scope of risks insured by American in the policy, the nature of the building and the reasoning of other courts that have interpreted this very clause, we too find that the clause is ambiguous, as it can reasonably be interpreted as applying only to environmental pollution. Thus, we affirm the denial of American's motion for summary judgment in this action.

We must, however, continue our analysis to determine the propriety of the summary judgment entered in favor of the Kolomses. In their motion for summary judgment, the Kolomses sought an order declaring that American had a duty to both defend and indemnify them in connection with the claims asserted against them. And while we have no difficulty affirming the trial court's judgment as it relates to American's duty to defend, we find that any determination relating to its duty to indemnify the Kolomses is premature.

American's duty to defend under the policy is much broader than its duty to indemnify. As long as the claims asserted against the Kolomses potentially fall within the coverage afforded to them under the policy, American has a duty to defend. *Outboard Marine Corp.*, 154 Ill. 2d at 125. Our finding that the exclusion clause in issue is ambiguous and that the Kolomses' interpretation of the clause is a reasonable one, coupled with our examination of the complaints asserting claims against the Kolomses, leads us to conclude: (1) that the claims asserted potentially fall within the policy's coverage; and (2) that American has a duty to defend against those claims.

The narrower duty to indemnify is ripe for consideration only if the insureds have incurred liability in the claim asserted against them. *Outboard Marine Corp.*, 154 Ill. 2d at 127-28. As we find nothing in the record before us to support a finding that the claims asserted against the Kolomses have been adjudicated or that the Kolomses have incurred any liability as a result of those claims, we hold that it was premature for the trial court to grant a summary judgment in favor of the Kolomses on the issue of American's duty to indemnify them.

In summary, we affirm the trial court's denial of American States' motion for summary judgment and the summary judgment it entered in favor of the Kolomses on the question of American's duty to defend. We reverse as premature the summary judgment entered against American on the question of its duty to indemnify the Kolomses.

Affirmed in part and reversed in part; cause remanded.

CAHILL and O'BRIEN, JJ., concur.