**TERRAMATRIX, INC., f/k/a ACZ, Inc., Plaintiff–Appellant,**

v.

**UNITED STATES FIRE INSURANCE COMPANY, a New York Corporation, and Reliance National Indemnity Company, a Foreign Corporation, Defendants–Appellees.**

No. 95CA2109.

Colorado Court of Appeals, Div. IV.

May 1, 1997.

Holland & Hart, Harry Shulman, Joseph W. Halpern, Fiona W. Ong, Denver, for Plaintiff–Appellant.

Fowler, Schimberg & Cowman, P.C., Daniel M. Fowler, Katherine Taylor Eubank, Denver, for Defendant–Appellee United States Fire Insurance Company.

Hall & Evans, L.L.C., Chris A. Mattison, Alan Epstein, Denver, for Defendant–Appellee Reliance National Indemnity Company.

Wiley, Rein & Fielding, Laura A. Foggan, Daniel E. Troy, N. Christopher Hardee, Washington, DC; Roberts & Zboyan, JoAnne Zboyan, Denver, for Amicus Curiae Insurance Environmental Litigation Association.

Opinion by Judge ROTHENBERG.

In this declaratory judgment action arising out of two insurance policies, plaintiff, TerraMatrix, Inc., appeals the summary judgment entered in favor of defendants, United States Fire Insurance Company (U.S.Fire) and Reliance National Indemnity Company (Reliance). We affirm.

TerraMatrix provides engineering and environmental consulting services. It owns a blueline printing machine, housed in leased office space, that produces blueprint-type documents. During its operation, the machine emits ammonia gas which is vented to the roof of the office building.

In 1994, another tenant of the building in which TerraMatrix maintained its office filed suit against TerraMatrix and others. The tenant alleged that TerraMatrix' printing machine was improperly vented and had released gases including anhydrous ammonia into the tenant's office space located above TerraMatrix' office.

The tenant sought relief for a variety of injuries caused by exposure to ammonia vapors including:

[I]njuries to his eyes, ears, nose and throat, injuries to his respiratory system, a permanent partial disability, physical pain and suffering, emotional distress, loss of enjoyment of life, loss of time ... out-of-pocket storage, moving and other expenses for his relocation of his business to his home and then to a new office space, expenses for the new office space, for new equipment and furnishings, past and future medical bills and expenses for the treatment of the injuries he sustained and such other damages as shall be established at trial....

TerraMatrix held a commercial general liability policy (CGL policy) issued by U.S. Fire and a professional services/pollution liability policy issued by Reliance. TerraMatrix notified both insurers of the tenant's action and sought coverage under both liability policies. Both insurers denied coverage. U.S. Fire maintained that the tenant's alleged injuries resulted from the release of a pollutant and, therefore, were subject to a pollution exclusion in its policy. It also denied coverage under the personal injury section of the policy. Reliance similarly denied coverage, maintaining that the tenant's injuries did not result from TerraMatrix' performance of professional services and that coverage was barred by an "owned or leased property" exclusion.

TerraMatrix then brought this declaratory judgment action against the insurers to determine the scope of coverage under both policies. After the parties had filed cross-motions for summary judgment, the trial court denied TerraMatrix' motion, granted both insurers' motions, and dismissed the complaint. In granting U.S. Fire's motion, the court addressed the applicability of the pollution exclusion, but did not determine whether coverage was available under the personal injury section of the policy.

On appeal, TerraMatrix asserts that: (1) the pollution exclusion in the U.S. Fire policy does not apply; (2) coverage should be provided under the bodily injury/property damage section of the policy; (3) coverage also is

available under a personal injury section of the U.S. Fire policy; (4) coverage is available under the Reliance professional services/pollution liability policy; (5) the "owned or leased property" exclusion in the Reliance policy does not apply; and (6) the scope of the applicable coverage under both policies requires U.S. Fire and Reliance to defend and to indemnify TerraMatrix in the underlying action. We reject each contention.

## I. Standard of Review

Summary judgment is proper under C.R.C.P. 56(c) when the pleadings, affidavits, depositions, and admissions show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. The moving party has the burden of establishing that no genuine issue of material fact remains. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo. 1987).

A material fact is one that affects the outcome of the case. *Sender v. Powell*, 902 P.2d 947 (Colo.App.1995). Whether a material fact remains is a question of law. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988).

In assessing the sufficiency of the evidence for purposes of determining a motion for summary judgment, all inferences from factual averments must be made in favor of the non-moving party. *CenCor, Inc. v. Tolman*, 868 P.2d 396 (Colo.1994).

## II. Duties of U.S. Fire Insurance Company

TerraMatrix first contends the trial court erred in entering summary judgment in favor of U.S. Fire. We disagree.

A trial court may not look beyond the plain words of an insurance contract to interpret it based on the contracting parties' underlying intent unless the contract terms are ambiguous or are used in a special or technical sense not defined in the contract. *National Casualty Co. v. Great Southwest Fire Insurance Co.*, 833 P.2d 741 (Colo.1992).

A document is ambiguous when it reasonably is susceptible to more than one meaning. The fact that the parties disagree about the meaning of a contractual provision is insufficient to establish ambiguity. *Kane v. Royal Insurance Co.*, 768 P.2d 678 (Colo. 1989).

The interpretation of an insurance contract and the determination whether that contract is ambiguous are questions of law, and this court need not defer to the trial court's interpretation to determine whether the plaintiff's claims are excluded from coverage. *See Union Insurance Co. v. Houtz*, 883 P.2d 1057 (Colo.1994).

The duty to defend is broader than the duty to indemnify and should be viewed separately. An insurer seeking to avoid this duty has a heavy burden. *Englewood v. Commercial Union Assurance Co.*, — P.2d —— (Colo.App. No. 93CA1923, July 11, 1996).

In determining whether there is a duty to defend, courts look at the allegations contained in the complaint filed in the underlying action. If those allegations potentially come within policy coverage, or if there is even some doubt, the insurer must defend the claim. The insurer must defend against all claims if some potentially covered claims are alleged. *Hecla Mining Co. v. New Hampshire Insurance Co.*, 811 P.2d 1083 (Colo.1991).

To avoid any policy coverage, an insurer must demonstrate that a policy exclusion applies which is subject to no other reasonable interpretations. An insurer has a duty to defend unless it can show that: (1) the allegations in the complaint against the insured describe only situations which are within the policy exclusions; and (2) there is no factual or legal basis on which the insurer might be held liable to indemnify the insured. *Englewood v. Commercial Union Assurance Co., supra.*

Determination of the duty to defend depends on the policy terms viewed in light of relevant principles of contract interpretation. If no duty to defend is found, no duty to indemnify can arise. However, even if a duty to defend is found, a duty to indemnify may not arise. *See Constitution Associ-*

ates v. New Hampshire Insurance Co., 930 P.2d 556 (Colo.1996).

The U.S. Fire CGL policy is based on a form agreement used in many insurance agreements. This type of policy has generated an enormous amount of litigation with varying results. *See Englewood v. Commercial Union Assurance Co., supra.*

Although U.S. Fire provides several types of coverage under this policy, the two relevant provisions cover bodily injury/property damage and personal injury/advertising injury.

### A. Bodily Injury/Property Damage Coverage

The Bodily Injury and Property Damage Liability provisions cover such injuries and damages if they are caused by an occurrence. An occurrence is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same generally harmful conditions."

Bodily injury consists of "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

Property damages includes:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss shall be deemed to occur at the time of the physical injury that caused it; or . . .

b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the 'occurrence' that caused it.

This form of coverage contains several exclusions. The pollution exclusion exempts U.S. Fire from the duty to defend or to indemnify for:

'Bodily Injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants . . . .

The policy defines pollutants as:

[A]ny solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fuels, acids, alkalis, chemicals and waste . . . .

According to TerraMatrix, the trial court erred in determining that the pollution exclusion was unambiguous and that it precluded coverage under the bodily injury/property damage section of the policy. We disagree.

Importantly, the pollution exclusion clause at issue is an *absolute* pollution exclusion clause and differs significantly from the pollution exclusion clause contained in earlier versions of the CGL contract. Earlier versions of the contract clause contained an exception for "sudden and accidental" releases of pollutants. *See Hecla Mining Co. v. New Hampshire Insurance Co., supra* (construing earlier version); *Englewood v. Commercial Union Assurance Co, supra* (same). However, the absolute pollution exclusion clause contains no such exception.

The pollution exclusion clause here specifically refers to claims of bodily injury and property damage and denies coverage for liability from such claims if the claims arose out of the "discharge, dispersal, seepage, migration, release or escape" of a pollutant, including alkalis and gaseous irritants and contaminants.

■ There is a split of authority among the jurisdictions that have interpreted absolute pollution exclusion clauses. Some courts have held the clause unambiguous under all circumstances. *See United States Liability Insurance Co. v. Bourbeau,* 49 F.3d 786 (1st Cir.1995). Other courts have held that the appropriate inquiry is whether the pollution exclusion clause is ambiguous when applied to the facts and circumstances of a particular case. *See Red Panther Chemical Co. v. Insurance Co. of State of Pennsylvania,* 43 F.3d 514 (10th Cir.1994).

We adopt the reasoning of those courts that determine ambiguity based on the facts and circumstances presented in a particular case. Such reasoning is in keeping with the approach our courts have taken in the interpretation of insurance policies. *See Allstate Insurance Co. v. Juniel,* 931 P.2d 511 (Colo. App.1996) (whether policy term is ambiguous is not determined in a vacuum, but by using objective standards within context of circumstances at issue).

Here, it is undisputed that TerraMatrix' printer produced ammonia as a bi-product of its operation which was supposed to be removed from the building through vents. According to the complaint, the ammonia contaminated the tenant's office because of leaks in the vent system or faulty design of the air intake system.

Ammonia is a colorless alkaline gas with a penetrating odor. *See Doland's Illustrated Medical Dictionary* 58 (26th ed.1981). It is regulated as a hazardous substance under several federal programs, *see* 40 C.F.R. § 302.4 (environmental cleanup program); 40 C.F.R. § 116.4 (clean water programs); 29 C.F.R. § 1926.55 (occupational safety programs), and also is treated as a component of air pollution under Colorado law. *See* §§ 25–7–136(3)(a)(I)(A) and 25–7–136(3)(a)(VI), C.R.S. (1996 Cum.Supp.).

Other jurisdictions have considered ammonia a pollutant when construing CGL policy language similar to that contained in this policy. *See Bituminous Casualty Corp. v. RPS Co.,* 915 F.Supp. 882 (W.D.Ky.1996); *American States Insurance Co. v. F.H.S., Inc.,* 843 F.Supp. 187 (S.D.Miss.1994); *see also Blackhawk–Central City Sanitation District v. American Guarantee & Liability Insurance Co.,* 856 F.Supp. 584 (D.Colo. 1994).

■ Under these circumstances, we hold that the pollution exclusion clause is unambiguous when applied to ammonia vapors, that ammonia constitutes a pollutant under the pollution exclusion clause, and that movement of the ammonia vapors within the office building air duct or ventilation system constituted a "discharge, dispersal . . . release, or escape" within the meaning of the pollution exclusion. *See American States Insurance Co. v. F.H.S., Inc., supra; Cook v. Evanson,* 83 Wash.App. 149, 920 P.2d 1223 (1996) (pollution exclusion not limited to classic environmental pollution).

In reaching this conclusion, we recognize that this case does not involve industrial or environmental pollution in the traditional sense and that there is a split of authority on this question. In fact, there is a smorgasbord of authority offering a varying range of views and analyses.

■ Nevertheless, we concur with the jurisdictions that have concluded the plain language of the absolute pollution exclusion is not limited solely to environmental or industrial contexts. *See American States Insurance Co. v. F.H.S., Inc., supra* (specialized scientific definitions of pollutant and pollution will not be applied to defeat unambiguous policy language); *Employers Casualty Co. v. St. Paul Fire & Marine Insurance Co.,* 52 Cal.Rptr.2d 17 (1996); *Cook v. Evanson, supra; see also American States Insurance Co. v. Nethery,* 79 F.3d 473 (5th Cir.1996); *White v. Freedman,* 227 A.D.2d 470, 643 N.Y.S.2d 160 (1996). *But see Stoney Run Co. v. Prudential–LMI Commercial Insurance Co.,* 47 F.3d 34 (2d Cir.1995); *American States Insurance Co. v. Koloms,* 281 Ill.App.3d 725, 217 Ill.Dec. 30, 666 N.E.2d 699 (1996) (pollution exclusion clause ambiguous because it could be limited to environmental pollution; application depends on circumstances under which the release occurred).

■ We also reject Terramatrix' contention that the reasonable expectations doctrine applies. Closely related to the doctrine of unconscionability, the reasonable expectations doctrine has been applied to prevent deception and to protect policy holders from exclusions that are not readily apparent. *See Davis v. M.L.G. Corp.,* 712 P.2d 985 (Colo. 1986). *See also Spaur v. Allstate Insurance Co.,* —— P.2d —— (Colo.App. No. 95CA1115, December 12, 1996) (holding doctrine of reasonable expectations inapplicable to unambiguous policy provisions). We perceive no circumstances here that would justify application of the reasonable expectations doctrine.

■ Accordingly, we conclude the trial court did not err in determining the pollution exclusion clause precludes coverage for the tenant's bodily injuries and property damage and in granting summary judgment in favor of U.S. Fire.

## B. Personal Injury Coverage

The second type of CGL coverage at issue here involves Personal Injury and Advertis-

ing Injury Liability. This form of coverage requires U.S. Fire to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' . . . to which this coverage applies."

TerraMatrix asserts that the trial court erred in entering summary judgment in favor of U.S. Fire because coverage was provided under the personal injury section of the policy. Specifically, TerraMatrix argues that because the tenant's complaint includes claims based on trespass and nuisance, such claims are covered in the policy by its use of the terms "wrongful entry" and "invasion of the right to private occupancy." TerraMatrix further claims the policy language is ambiguous and must be construed in favor of coverage. We are not persuaded.

Although the trial court's summary judgment did not refer to the personal injury section, the construction of an unambiguous contract and the determination of ambiguity are questions of law. Therefore, we stand in the same position as the trial court in determining the scope of coverage. *See Union Insurance Co. v. Houtz, supra.*

The personal injury section provides coverage for damages resulting from a variety of actions including wrongful eviction, wrongful entry, and invasion of the right to private occupancy. However, these tortious activities are not defined in the policy.

The definition of personal injury that is contained in the policy is different than the definition applied in general tort law. Under the policy, personal injury is defined as:

[An] injury, other than 'bodily injury', arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. *The wrongful eviction from, wrongful entry into, or invasion of the right to private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;*

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right to privacy. (emphasis added)

There is no pollution exclusion clause for this form of coverage and other courts have rejected a construction of the pollution exclusion that would apply it to personal injury coverage. *See Pipefitters Welfare Educational Fund v. Westchester Fire Insurance Co.,* 976 F.2d 1037 (7th Cir.1992).

TerraMatrix relies heavily on *Blackhawk–Central City Sanitation District v. American Guarantee & Liability Insurance Co., supra.* There, the federal district court construed the same CGL policy personal injury provision and determined that the phrase "by or on behalf of its owner, landlord or lessor" was ambiguous because it could modify either "wrongful eviction . . . wrongful entry . . . or invasion," or "a person [who] occupies" the structure. The *Blackhawk* court reasoned that one construction limited the scope of coverage to cases in which an owner, landlord, or lessor commits the torts listed, but that another plausible construction related to type of occupancy, and required coverage only if the person occupying the premises did so "by or on behalf of [the premises'] owner, landlord or lessor." It thus concluded that, because either construction was reasonable, it should adopt the construction requiring coverage.

■ However, we are persuaded by the reasoning of other courts that have found the personal injury provision unambiguous and applicable only to entries, evictions, and invasions committed by or on behalf of the owner, landlord, or lessor. *See United States Fidelity & Guaranty Co. v. Goodwin,* 950 F.Supp. 24 (D.Maine 1996).

■ Here, it is undisputed that the emission of ammonia gas from TerraMatrix' print machine was not done by or on behalf of an owner, landlord, or lessor of the office building. Hence, we conclude coverage was unavailable under the personal injury provisions.

### III. Duties of Reliance Insurance Company

TerraMatrix next contends the trial court erred in entering summary judgment in favor of Reliance. Again we disagree.

The Reliance policy contained the following pertinent provisions:

COVERAGE A—PROFESSIONAL LIABILITY

To INDEMNIFY the INSURED for all sums in excess of the Retention amount ... which the INSURED shall become legally obligated to pay as DAMAGES as a result of CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY, IN WRITING, DURING THE POLICY PERIOD ... by reason of any act, error, or omission in PROFESSIONAL SERVICES rendered . or that should have been rendered by the INSURED. . . .

COVERAGE B—CONTRACTOR'S POLLUTION LEGAL LIABILITY

To INDEMNIFY the INSURED for all sums in excess of the Retention amount ... which the INSURED shall become legally obligated to pay as DAMAGES as a result of CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY, IN WRITING, DURING THE POLICY PERIOD ... for POLLUTION CONDITIONS arising out of the performance of PROFESSIONAL SERVICES rendered by the INSURED;

. . . .

It is a condition precedent to coverage under this policy that coverage is only afforded for PROFESSIONAL SERVICES . . . . performed by the INSURED only. . . .

The term "professional services" was defined to include the performance of the following activities:

Site Assessment; Remedial Investigations; Feasibility Studies; Environmental Impact Assessment; Hydrogeological and Geotechnical Investigations; Mine and Mineral Engineering; Construction Management; Asbestos Identification/Inspection.

Initially, we note that the Reliance policy, unlike the U.S. Fire policy, contains a choice of law clause requiring application of New York law. *See Hansen v. GAB Business Services, Inc.,* 876 P.2d 112 (Colo.App.1994)

(contractual choice of law provisions generally enforceable).

New York law requires that an insurance contract must be construed in a fair and reasonable manner after considering the subject matter and purpose of the policy. *DeForte v. Allstate Insurance Co.,* 81 A.D.2d 465, 442 N.Y.S.2d 307 (1981). Also, contracts must be construed to give unambiguous policy provisions their plain and ordinary meaning. If there is ambiguity regarding coverage, we must resolve doubt in favor of the insured and against the insurer. *Lavanant v. General Accident Insurance Co.,* 79 N.Y.2d 623, 584 N.Y.S.2d 744, 595 N.E.2d 819 (1992); *New York v. American Manufacturers Mutual Insurance Co.,* 188 A.D.2d 152, 593 N.Y.S.2d 885 (1993).

When interpreting the provision of an insurance policy, the test is to determine the meaning of the words from the viewpoint of an average person. A policy must be read in a practical way so as not to revise or extend the risk.

Here, we perceive no ambiguity in the relevant provisions. Professional services coverage is provided only for damages resulting from the performance of specifically stated services: site assessment, remedial investigations, feasibility studies, environmental impact assessment, hydrogeological and geotechnical investigations, mine and mineral engineering, construction management, and asbestos identification/inspection.

These enumerated services do not include office activities such as the use of a printing machine. *See Albert J. Schiff Associates, Inc. v. Flack,* 73 A.D.2d 329, 425 N.Y.S.2d 612 (1980), *aff'd,* 51 N.Y.2d 692, 435 N.Y.S.2d 972 417 N.E.2d 84 (1980) (office activities that set the stage for the performance of professional services are not within the coverage of professional services liability policy); *see also Propis v. Fireman's Fund Insurance Co.,* 112 A.D.2d 734, 492 N.Y.S.2d 228, (1985), *aff'd,* 66 N.Y.2d 828, 498 N.Y.S.2d 363, 489 N.E.2d 250 (1985). Nor is use of a printing machine among the activities covered under the pollution provision of the policy.

Although we affirm for the reasons state above, we also address the trial court's ruling that, under New York law, the coverage sought by TerraMatrix was barred under an "owned or leased property" exclusion which barred:

> any CLAIM based upon or arising out of ... property owned, leased or rented by or to the insured....

The parties have not cited to specific New York law construing this provision. Rather, they rely on general principles of policy construction, and thus Reliance asserts that this unambiguous provision precludes coverage for all damage arising out of TerraMatrix' property. We agree.

■ In his complaint, TerraMatrix' co-tenant alleged that ammonia gas was being emitted by a print machine owned by TerraMatrix and housed in the offices leased by TerraMatrix. Hence, we conclude the trial court did not err in denying coverage based on this exclusion.

Accordingly, the trial court did not err in entering summary judgment on the claims against Reliance.

In summary, we hold that neither the U.S. Fire CGL policy nor the Reliance policy requires insurers to defend or to indemnify TerraMatrix in the underlying action. *See Constitution Associates v. New Hampshire Insurance Co., supra* (if there is no duty to defend, there can be no duty to indemnify). Therefore, summary judgment was appropriate.

Judgment affirmed.

HUME and KAPELKE, JJ., concur.