AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Plaintiff-Appellant and Cross-Appellee, v. JOHN M. MACK, Defendant-Appellee and Cross-Appellant (Holstein, Mack and Klein *et al.*, Defendants).

First District (4th Division)    No. 1—98—4582

Opinion filed February 3, 2000.

Kenneth M. Lodge and Thomas J. Cunningham, both of Hopkins & Sutter, of Chicago, for appellant.

Jerome H. Torshen, Abigail K. Spreyer, and James K. Genden, all of Torshen, Spreyer, Garmisa & Slobig, Ltd., of Chicago, for appellee.

JUSTICE HALL delivered the opinion of the court:

Plaintiff, American National Bank & Trust Co. of Chicago, brought this action to recover on a guaranty executed by defendant, John M. Mack, of the obligations of the law firm of Holstein Mack & Klein. The parties filed cross-motions for summary judgment. Defendant also filed motions to strike various affidavits filed by plaintiff in support of its motion for summary judgment. On November 9, 1998, the trial court entered an order granting summary judgment in favor of defendant and denying defendant's motions to strike the affidavits. The November 9, 1998, order resolved all of the claims as to all of the parties in the case known as American National Bank & Trust Co. v. Mack, No. 96 L 4034, but did not resolve all the claims in the consolidated case known as American National Bank & Trust Co. v. Holstein Mack & Klein, No. 96 L 4927. However, the trial court's November 9, 1998, order stated that pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), there was no just reason to delay either enforcement or appeal. Plaintiff filed a timely notice of appeal on December 4, 1998. Defendant filed a timely notice of cross-appeal on December 10, 1998.

BACKGROUND:

Between 1989 and 1995, plaintiff loaned the law firm of Holstein Mack & Klein (HMK) in excess of $1,700,000. HMK has ceased operating, is a debtor in a chapter 7 bankruptcy case, and has defaulted on its obligations to plaintiff.

In 1989 defendant was a name partner at HMK. On December 5, 1989, in connection with a $600,000 line of credit, defendant executed a continuing guaranty for the obligations of HMK to plaintiff (hereinafter the Guaranty). The Guaranty was limited to recovery of $600,000 plus interest on all loans and certain expenses. The Guaranty gave defendant the right to discontinue by giving due notice to plaintiff. Notice of discontinuance limited the obligations subject to the Guaranty to those obligations outstanding at the time of the notice.

On July 14, 1994, defendant gave plaintiff written notice that he was no longer a partner at HMK and that he was discontinuing his Guaranty.

After defendant left the firm, plaintiff continued its relationship with HMK. Plaintiff continued to extend credit to HMK and renewed HMK's notes as they matured. In June 1994, plaintiff restructured HMK's loans. The line of credit was reduced from $600,000 to $100,000 and HMK was given two term loans in the total amount of $1,675,000. As part of this restructuring, plaintiff sought and received new guaranties and updated financial statements from the HMK

partners. Defendant did not sign any new promissory notes, did not sign any new guaranty, and did not submit updated financial statements to plaintiff. In 1995, HMK's loans were again restructured and the notes from which this case arose were issued. Prior to approving these notes, plaintiff again sought and received new guaranties from the HMK partners. Defendant did not sign a new guaranty in 1995.

After HMK defaulted on its obligations to plaintiff, plaintiff sued defendant on his 1989 Guaranty. Plaintiff also filed a separate action against the other HMK guarantors. The two cases were consolidated. Plaintiff moved for summary judgment. Plaintiff's motion relied on two affidavits from bank officer Michael Hayes. The Hayes I affidavit was filed in connection with plaintiff's motion for summary judgment against the other HMK guarantors and stated that HMK was in default on four notes totaling $1,700,000, all of which were executed by HMK on or after May 31, 1995.

The Hayes II affidavit, filed in connection with the summary judgment motion against defendant, stated that HMK's debt as of July 14, 1994, exceeded $600,000 and that the total amount due from HMK on all of its obligations never went below $600,000. Defendant moved to strike the Hayes II affidavit on the grounds that it was conclusory and not supported by bank records.

Plaintiff then filed three affidavits from another bank officer, Brenda Pawlak. Pawlak I, dated February 24, 1998, stated that it was based on a personal review of the bank records and that on July 14, 1994, HMK owed plaintiff $951,534. It also stated that HMK's total debt never dipped below $600,000. Attached to Pawlak I as exhibits were illegible bank records. Defendant moved to strike Pawlak I.

In response, plaintiff filed a supplemental Pawlak affidavit (Pawlak II), dated March 31, 1998. Pawlak II provided legible exhibits and reaffirmed that on July 14, 1994, HMK's total debt to plaintiff was $951,534. Pawlak II, like Pawlak I and Hayes II, stated that HMK's total debt to plaintiff never dipped below $600,000.

Plaintiff's records indicate that a total of $2,594,924.20[1] in payments was received from HMK after July 14, 1994. $2,099,048.23 of these payments were allocated to principal. On July 21, 1998, defendant filed a cross-motion for summary judgment, arguing that his Guaranty was discharged by payment because HMK's post-July 14, 1994, payments on its debts exceeded the total amount owed to plaintiff on July 14, 1994. Defendant also argued that the evidence of the restructuring of the HMK debt constituted a novation, entitling defendant to be discharged from his Guaranty.

---

[1]Plaintiff states in its briefs that this amount was $1,459,483.54; however, the bank records show that the correct figure is $2,594,924.20.

After the cross-motions were fully briefed, argued, and taken under advisement, plaintiff brought a motion to correct an error in the Pawlak II affidavit. Pawlak III stated that HMK's total debt on July 14, 1994, was $1,740,002, not $951,534 as previously stated in Pawlak I and II. Pawlak III explained that the $951,534 amount was computed before all the records were assembled. Pawlak III also stated that all of the relevant records were attached to Pawlak I and Pawlak II. Defendant objected and moved to strike Pawlak III.

On November 6, 1998, the circuit court entered an order granting defendant's motion for summary judgment, denying plaintiff's motion for summary judgment, denying defendant's motions to strike the Hayes II and Pawlak I affidavits, and granting plaintiff leave to file the Pawlak III affidavit. Plaintiff now appeals from the portion of the order granting defendant's motion for summary judgment. Defendant cross-appeals from the portion of the order denying his motions to strike the affidavits and granting leave to file Pawlak III.

DISCUSSION

A. Standard of Review

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *American States Insurance Co. v. Koloms*, 281 Ill. App. 3d 725, 666 N.E.2d 699 (1996). This court reviews an order granting summary judgment *de novo*. *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 706 N.E.2d 460 (1998).

B. Discharge by Payment

■ At issue in the direct appeal is the allocation of the payments received by plaintiff from HMK after July 14, 1994, the date of defendant's discontinuance. On July 14, 1994, HMK's total debt to plaintiff was $1,740,002. Plaintiff's exhibits show that after July 14, 1994, plaintiff received $2,594,924.20[2] in payments from HMK. Bank records show that $495,875.97 was allocated to outstanding interest and $2,099,048.23 was allocated to outstanding principal. According to defendant, the payments received from HMK after July 14, 1994,

---

[2] For the first time on appeal plaintiff argues that this number is incorrect because it fails to distinguish between actual payments made by the borrower and mere renewals of existing obligations. This issue has been waived, as a party cannot assert on appeal matters that were not raised in the trial court. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 701 N.E.2d 493 (1998).

should have been allocated using the "first in first out" (FIFO) method. That is, the payments should have been allocated first to the oldest outstanding debt. Thus, because plaintiff received payments in excess of the total amount owed by HMK on July 14, 1994, defendant's Guaranty was discharged by payment. The circuit court adopted this reasoning in granting summary judgment in favor of defendant.

Plaintiff contends that, pursuant to the Guaranty, plaintiff could allocate the payments received from HMK in any manner it chose. Nothing in the Guaranty required plaintiff to take the payments it received from HMK and apply them to a portion of the guaranteed debt that existed prior to the notice of discontinuance as opposed to applying it to a portion of the guaranteed debt that was created after the notice of discontinuance. Plaintiff argues in its brief that it chose to allocate the payments first to the outstanding accrued interest and then to reduce the principal of obligations existing both before and arising after July 14, 1994. According to plaintiff, because the total amount owed by HMK never went below $600,000, defendant's Guaranty was not discharged by payment.

Plaintiff is correct that the guaranty allows it to allocate the payments received from HMK in any manner it chooses. The Guaranty provides:

"All payments received from the Debtor, or on account of the guaranteed debt from whatever source shall be taken and applied by the Bank toward the payment of such guaranteed debt, and in such order of application as the Bank may in its sole discretion from time to time elect, and this guaranty shall apply to and secure any ultimate balance that shall remain owing to the Bank. The Bank shall have the exclusive right to determine how, when, and what application of payments and credits, if any, whether derived from the Debtor or any other source shall be made on the guaranteed debt, and such determination shall be conclusive upon the undersigned."

When the parties have agreed how payments should be applied, the law need look no further. *Cohen v. Chicago*, 377 Ill. 221, 36 N.E.2d 220 (1941); *Village of Winfield v. Reliance Insurance Co.*, 64 Ill. App. 2d 253, 212 N.E.2d 10 (1965); see also 60 Am. Jur. 2d *Payment* § 111, at 956 (1987). Here the parties have agreed that plaintiff would determine, in its sole discretion, how the payments would be allocated.

Defendant argues that the express language of the Guaranty required plaintiff to apply the payments to the guaranteed debt. According to defendant, after a notice of discontinuance is received, "guaranteed debt" is limited to the obligations created and existing before receipt of the notice. Thus, the Guaranty required plaintiff to

apply any payments received to the debt incurred prior to July 14, 1994, the date of discontinuance. This argument is not supported by the plain language of the Guaranty.

The Guaranty defines "guaranteed debt" as "all the indebtedness of the Debtor to the Bank, including interest, and all said expenses." "Indebtedness" includes "any and all indebtedness, obligations and liabilities of every kind and nature of the Debtor to the Bank *** whether now existing or hereafter created or arising." Neither "indebtedness" nor "guaranteed debt," as defined by the Guaranty, is limited to debts incurred prior to a notice of discontinuance. The Guaranty merely provides that the Guarantor is not responsible for any portion of the "guaranteed debt" that is created after a written notice of discontinuance is received by the bank. Thus, in this case the "guaranteed debt" includes all extensions of credit and renewals of matured loans, whether made before or after defendant's notice of discontinuance. However, defendant is only responsible for the portion of the guaranteed debt incurred prior to July 14, 1994.

The Guaranty further provides that it remains in "full force and effect" until the bank receives written notice of discontinuance and "all guaranteed debt created and existing before receipt of such notice shall have been fully paid." The Guaranty remained in full force and effect after July 14, 1994, because the total guaranteed debt due on that date, $1,740,002, had not been fully paid. Thus, pursuant to the express terms of the Guaranty, plaintiff was free to extend further credit to HMK without notice to defendant. Plaintiff was further free to allocate any payments received from HMK in any manner it chose.

The question then becomes how did plaintiff actually allocate the payments received. In its brief plaintiff suggests that the payments were applied first to accrued interest and then to principal on obligations created after defendant's notice of discontinuance. However, plaintiff's affidavits and admissions establish that the payments were applied first to outstanding accrued interest and then to the earliest outstanding principal. The Hayes II affidavit, submitted by plaintiff, does not discuss the manner in which payments were allocated. Plaintiff also offered several affidavits from Pawlak, a bank officer. In her second affidavit, Pawlak stated:

> "10. The operations department first checks the computer system to determine the amount currently due. Next, the payment is applied to the interest due on the earliest issued bill which is still outstanding, then to the principal on the earliest issued bill which is still outstanding, then to the interest due on the next bill that is outstanding, and then to principal on the next bill that is outstanding, etc."

Pawlak further averred that once a loan matures "the operations department works with the workout department to determine how payments are to be applied." Routinely, payments received after maturity are applied first to accrued interest, and then to principal, only after all accrued interest is paid. Plaintiff produced nothing to show that it strayed from this allocation procedure in this case. Indeed, in briefing the summary judgment motions, plaintiff admitted to the court that, in this case, principal payments received from HMK were applied to the earliest debt first:

"Here the Bank clearly chose to apply all payments received to the most recently incurred interest, and then to the earliest outstanding but unpaid invoice showing principal due."

■ ■ A statement included in a document filed with the court is binding on the party making it. When the admission is made by an attorney within the scope of his authority, it is binding on the client. *Fearon v. Mobil Joliet Refining Corp.*, 131 Ill. App. 3d 1, 475 N.E.2d 549 (1984). Plaintiff's admission that it applied the principal payments to the oldest debt first was binding on plaintiff. The debt incurred before July 14, 1994, was obviously older debt than any post-discontinuance extensions of credit. Thus, defendant's Guaranty was discharged by payment because the $2,099,048.23 in principal payments received from HMK after July 14, 1994, far exceeded the $1,740,002 due on July 14, 1994.

Both parties discuss the common law of payments. The common law of payments is inapplicable in this case because the Guaranty expressly states that plaintiff may choose, in its sole discretion, how to apply any payments received. For the same reason plaintiff's discussion of the lowest intermediate balance rule and *First Wisconsin Financial Corp. v. Yamaguchi*, 812 F.2d 370 (7th Cir. 1987), is irrelevant.

We find that defendant's Guaranty was discharged by payment.

Because we have found that the guaranty was discharged by payment, we need not address the issues raised in defendant's cross-appeal.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HOFFMAN, P.J., and SOUTH, J., concur.